[Crim. No. 1455. Second Appellate District, Division One.—March. 30, 1927.]

## THE PEOPLE, Respondent, v. JAMES J. McGILL, Appellant.

[1] CRIMINAL LAW—BURGLARY OF STORE—LARCENY OF GOODS—IDENTIFICATION OF GOODS—SUFFICIENCY OF.—In this prosecution for burglary of a store and for grand larceny of goods taken from said store, the garments admitted in evidence were sufficiently identified as being the same garments taken from the store in question at the time charged.

[2] ID.—VALUE OF GOODS—PRICE USED—LARCENY.—In such prosecution, it was immaterial whether the wholesale or retail price was used in computing the value of the goods, where in either case the total value of the goods was in excess of two hundred dollars and thus sufficient to support the charge of grand larceny.

[3] ID.—COMMISSION OF OTHER BURGLARIES AND LARCENY—GENERAL PLAN OR SCHEME—ADMISSION OF EVIDENCE.—In such prosecution, evidence of offenses other than that· charged against the defendant was properly admitted, where such evidence showed that six different acts of larceny and burglary were committed by defendant and his co-defendant under the same plan, at the same place and at about the same time, all in pursuance of a plan, system, or scheme to steal from the store in question and other stores and dispose of the goods at a specified price per garment.

---

2. Proof of articles stolen to determine degree of larceny, note, Ann. Cas. 1912A, 895. See, also, 15 Cal. Jur. 904; 17 R. C. L. 65.

[4] ID. — WHEN EVIDENCE OF OTHER CRIMES ADMISSIBLE — GENERAL RULE.—Generally speaking, evidence of other crimes is admissible when it tends to establish intent, or guilty knowledge, motive, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, when it tends to connect the defendant with the crime charged, or when the other crimes are a part of the *res gestae.*

[5] ID.—SEVERAL CRIMES PART OF ONE SCHEME—EVIDENCE.—Where several crimes are committed as part of one scheme or plan, all of the same general character and tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, and thus directly tend to show logically that the crime in question was a part of such common scheme.

[6] ID. — ADDITIONAL INSTRUCTION—ABSENCE OF COUNSEL—PRESENCE OF DEFENDANT—EXCEPTION—SECTION 1176, PENAL CODE.—In such prosecution, there was no error in giving an additional instruction, relating to the insufficiency of the evidence to justify a verdict of burglary in the first degree, in the absence of defendant's counsel, but while defendant was present; and it was not necessary for the trial court to order that an exception be entered in defendant's behalf to the giving of such instruction, as such exception was preserved under the provisions of section 1176 of the Penal Code.

[7] ID. — FACT—INSTRUCTION—CONSTITUTIONAL LAW.—In such prosecution, the giving of an instruction relating to the insufficiency of the evidence to justify a verdict of burglary in the first degree did not constitute a violation of the provisions of section 19 of article VI of the constitution, where there was nothing in the instruction to indicate any opinion of the court on the facts of the case, or to infer that the jury should return a verdict of burglary in the second degree.

[8] ID. — VERDICT — EVIDENCE—INSTRUCTION.—In such prosecution, it was the duty of the trial court to instruct the jury as a matter of law not to return a verdict of burglary in the first degree where the evidence would not support such verdict.

[9] ID.—MILITARY SERVICE OF DEFENDANT—PHYSICAL CONDITION—EVIDENCE.—In such prosecution, the trial court did not err in refus-

---

4. Admissibility of evidence of other offenses, notes, 44 Am. Rep. 299; 105 Am. St. Rep. 976; 7 Ann. Cas. 66; 8 Ann. Cas. 773; 16 Ann. Cas. 669; 62 L. R. A. 199; 43 L. R. A. (N. S.) 668, 755, 774, 778. See, also, 8 Cal. Jur. 63, 68; 8 R. C. L. 201.

  5. See 8 Cal. Jur. 69; 8 R. C. L. 203.

  6. See 8 Cal. Jur. 512.

  8. See 8 Cal. Jur. 284.

ing the defendant's offer to prove his military service; and the fact that defendant had been wounded would not aid the jury unless his physical condition was shown.

(1) 9 C. J., p. 1081, n. 67; 36 C. J., p. 906, n. 59. (2) 36 C. J., p. 801, n. 12. (3) 16 C. J., p. 595, n. 16, p. 603, n. 86. (4) 16 C. J., p. 574, n. 56, p. 588, n. 8, p. 589, n. 13, 18, p. 590, n. 25, p. 591, n. 33. (5) 9 C. J., p. 1065, n. 25; 36 C. J., p. 878, n. 60. (6) 16 C. J., p. 1089, n. 53. (7) 16 C. J., p. 946, n. 33, p. 953, n. 35. (9) 16 C. J., p. 560, n. 64, p. 562, n. 1; 17 C. J., p. 179, n. 2:

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Spencer M. Marsh, Judge. Affirmed.

The facts are stated in the opinion of the court.

Light & Lane for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

McLUCAS, J., *pro tem.*—In this case the information charges the defendant McGill and one Frank McGettigan in count one with the crime of burglary and in count two with the crime of grand larceny.

Defendant McGettigan entered a plea of guilty. Defendant McGill stood trial and was found guilty of the crime of second degree burglary and of the crime of grand larceny. He appeals from the judgment pronouncing sentence and from the order denying his motion for a new trial.

Defendants were employed as window washers of the outside windows on the first floor of Blackstone's store in Los Angeles. On June 30, 1926, they left their apartments about midnight, drove downtown and parked outside the store of the Blackstone Company. Defendant McGettigan testified that both defendants entered the store building on the third floor by way of the fire-escape, went to the fourth floor and there filled some window buckets with silk dresses and lingerie; that he was leaving the building by the fire-escape when he was shot by the night watchman, and that his co-defendant, the appellant McGill, escaped. The night

watchman testified that he saw McGettigan and another man enter the building and go into the third floor; that he shot McGettigan, but that the other man escaped before he could identify him. Officer Bain testified that defendant McGill admitted that he had some garments under his arm' which he could not get away with and dropped them on the roof near the rear fire-escape. The appellant denies entering the store and denies taking any property. He admits his presence outside the store on the same night the crime was committed, but claims he left before the store was entered.

[1] Appellant's first point is that there was not sufficient identification of the garments admitted in evidence as being the same garments taken from Blackstone's store on the morning of July 1, 1926. The night watchman identified one of the buckets containing the garments by a mark which he had placed thereon, and stated that the buckets were similar to those taken by him from defendant McGettigan at the time of the burglary. The night watchman also identified a mark which he had placed on one of the garments admitted in evidence. The witness Bals, who was the building superintendent, testified that he found twenty-eight silk garments near the rear fire-escape. While he could not say that the garments admitted in evidence were the identical garments found by him, yet he stated they were "similar" garments and "looked like" those taken from the store. The assistant buyer for the Blackstone Company testified that she assisted in buying this merchandise and had handled it every day; that she had examined these garments, first at the police station, afterward at the preliminary hearing, and that the merchandise which she examined on these occasions was the same as that introduced at the trial. We believe the testimony of these witnesses was sufficient identification of the stolen garments to be taken into consideration by the jury along with the other evidence in the case, including the testimony of appellant's co-defendant that both defendants committed the burglary.

[2] Appellant contends that the trial court erred in overruling defendant's objection to the measure of value of the goods in question. The buyer was the only witness who testified as to value, and she stated the retail price under objections of counsel for the defendant. On cross-examina-

tion the witness testified that the wholesale price was less forty per cent discount from the retail price. The total value of the goods was in excess of two hundred dollars, whether the wholesale or retail price be used in the computation. It thus becomes immaterial which figure is used in determining the value; in either case the value was sufficient to support the charge of grand larceny.

[3] Appellant urges that the trial court should have sustained his objection to the introduction of testimony as to other offenses than the one under which he was placed on trial. It was stated by the trial court that this testimony was admitted to show intent. It consisted of testimony by the co-defendant that the defendants had six times previously entered the Blackstone store and taken goods therefrom. It further consisted of defendant's own admissions of three such entries which he made to the police officers prior to the trial. In support of his position the defendant argues that where defendant denies the commission of the crime charged, then the question of intent becomes immaterial. However, upon examination of the record, we find that some of this testimony was given without objection and that no motion to strike such testimony was made by the defendant. Appellant's co-defendant testified that the defendants had entered Blackstone's store six times previously and taken merchandise therefrom. No objection was made until the district attorney inquired how many pieces of merchandise were taken. Officer Bain testified, over objection, that the appellant admitted that the defendants entered Blackstone's store on three other occasions and took thirty or forty pieces of merchandise on each occasion, having already made arrangements to dispose of these garments at one dollar apiece. Counsel for defendant on *voir dire* elicited from the witness Bain the testimony that appellant said he could produce dresses in excess of the value of ten thousand dollars.

The general rule against the admission of evidence of other crimes is well settled. But certain exceptions to the rule are also well recognized. [4] Generally speaking, such evidence is admissible when it tends to establish intent, or guilty knowledge, motive, a common scheme or plan embracing the commission of two or more crimes so related to

each other that proof of one tends to establish the other, when it tends to connect the defendant with the crime charged, or when the other crimes are a part of the *res gestae.* In the present case the evidence shows that six different acts of larceny and burglary were committed by the same defendants, under the same plan, at the same place and at about the same time, all in pursuance of a plan, system, or scheme to steal from the Blackstone Company and other stores and dispose of the goods at one dollar per garment. **[5]** Where several crimes are committed as part of one scheme or plan, all of the same general character and tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, and thus directly tend to show logically that the crime in question was a part of such common scheme. (8 Cal. Jur. 69.) Evidence of a general scheme or plan to steal horses was held properly admitted in *People* v. *Dixon,* 94 Cal. 255, 259 [29 Pac. 504]. In *People* v. *Winthrop,* 118 Cal. 85 [50 Pac. 390], evidence of a plan to commit robbery was held admissible for the reason that such evidence had a direct tendency to connect the defendant with the robbery as charged, although such evidence had a tendency to show an attempt to commit another offense. In the present case the evidence clearly shows that a plan or conspiracy was formed between the defendants to steal from department stores and dispose of the loot for a small sum of money. Evidence of such conspiracy was clearly admissible. In *People* v. *Ruef,* 14 Cal. App. 576, the court said (page 601) [114 Pac. 48, 54] : ''The rule is that where several crimes are connected as part of one scheme or plan, all of the same general character, and tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, and thus directly tending to show logically that the crime in question was a part of such common scheme. If the several crimes are part of a chain of cause and consequence so linked as to be necessarily connected with the system or general plan, they are admissible. In a case cited by Lord Ellenborough in *Rex* v. *Whiley,* 2 Lea, 985, 1 New Rep. 92, where a man had committed

three burglaries in one night, and stole a shirt at one place and left it at another, they were all so connected that the court heard testimony of all three burglaries, Lord Ellenborough remarked: 'If crimes did so intermix, the court must go through the detail.' " In *People* v. *Tomalty*, 14 Cal. App. 224 [111 Pac. 513], defendant was charged with falsification of public records, and evidence of other falsifications was held admissible as part of a scheme to conceal shortages in the treasury. *People* v. *Ferdinand*, 194 Cal. 555 [229 Pac. 341], was a case in which it was held, in a prosecution for homicide committed in carrying out a conspiracy to commit robbery, that proof of the robbery after the killing was admissible in evidence as a part of the general conspiracy to commit robbery. The court said, page 562: "The fact that in carrying out the conspiracy to commit robbery a crime of greater magnitude was also committed does not affect the principle that acts of each of the conspirators which are performed during the life of the conspiracy, and which acts are within the scope and in furtherance of the conspiracy, are admissible in evidence. If no murder had been committed and the defendants had been tried on a charge of robbery affecting the victims of any one of the several robberies on the night in question, it could not be doubted that evidence as to the commission of either or both the other robberies would have been admissible." In *People* v. *Jo Fong*, 59 Cal. App. 259 [210 Pac. 548], evidence was held properly received showing that almost simultaneously with the shooting of the deceased another member of the tong of which deceased was a member was shot at and wounded, as tending to show a preconceived and prearranged design on the part of defendants to act in concert in the destruction of the life of the deceased. In *People* v. *Wilson*, 76 Cal. App. 688 [245 Pac. 781], it was held that, where the offense of which defendant stands accused was perpetrated in furtherance of a general conspiracy to commit crime, the character and purpose of the conspiracy may have a tendency to shed light upon the particular offense charged. Examination of cases in other jurisdictions discloses a similar rule as to admitting evidence of other crimes. In *State* v. *Morgan*, 129 La. 154 [55 South. 747], it was held that evidence of other burglaries committed

at about the same time as the one under investigation was admissible for the reason that such evidence bore directly upon the crime charged by showing the same method and system were employed by defendants under similar conditions only a few days before as were employed in connection with the crime under investigation. In *State* v. *Othick* (Mo.), 184 S. W. 107, it was held that evidence of other thefts by the defendants was admissible as part of the common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tended to establish the other. In *Mason* v. *State,* 42 Ala. 532, proof was admitted of a series of other burglaries committed by the defendant under similar conditions during the same week and in the same region. In *Ford* v. *State,* 34 Ark. 649, where the charge was murder committed during the robbery of one person, proof was received of a general plan to rob the store of the same and other persons. In *Commonwealth* v. *Scott,* 123 Mass. 225 [25 Am. Rep. 81], proof was received of various criminal doings showing a plan to rob banks, and particularly the one in question. In the present case the evidence was clear that the defendants had formed a conspiracy to burglarize stores and dispose of the merchandise thus obtained. We therefore conclude that evidence of offenses other than that charged against the defendant was properly admitted under the facts as shown in this case.

[6] Appellant assigns as error the giving of an additional instruction in the absence of defendant's counsel, but while defendant was 'present. During the deliberations of the jury the following proceedings occurred. We quote from the transcript, pages 122, 123, and 124:

"The Court: In the case of *People* v. *James J. McGill* the defendant is present. The people are represented here by counsel, but the attorney for the defendant cannot be found about the building anywhere. We have waited some little time now for him, and we are unable to find him. As I understood it, the jury wish some further instructions in regard to the matter. If the foreman will state—

"The Foreman: If your Honor please, in regard to the first and second degree of the charge of burglary, we don't seem to come to any agreement on that, whether we can bring in on second degree or not.

"The Court: Does the district attorney wish to make any concession in the matter?

"Mr. Scheinman: I don't know exactly how to state that—I will stipulate, if the court please, if there is a question of degree on the charge of burglary, that it is second degree burglary. In other words, if the jury believe from the evidence beyond a reasonable doubt that the defendant is guilty of the crime of ·burglary, the district attorney will stipulate that it is burglary of the second degree, if that is satisfactory to your Honor.

"The Court: In other words, you are willing to stipulate that there is no testimony here which would sustain a verdict of burglary in the first degree?

"Mr. Scheinman: Yes.

"The Court: I might give the instruction on that subject as bearing upon the question of the degree of burglary of which the defendant is guilty, if any. I will give the instruction, as I did before, that you are instructed that every burglary of an inhabited dwelling house or building, committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who, while in the commission of said burglary, assaults any person, is burglary in the first degree. All other kinds of burglary are of the second degree. The phrase 'nighttime' as herein used, means the period between sunset and sunrise. If you believe from the evidence beyond a reasonable doubt that the defendant did commit the crime of burglary as charged in the information, it shall be your duty, ladies and gentlemen of the jury, to determine the degree of the offense in this case, and to indicate the same in your verdict. I might say that I think there is no proof here whatever that this building which is alleged to have been entered—I think there is no testimony to the effect that it was an inhabited dwelling house. I think there is no testimony here that the defendant was armed with a deadly weapon. I think there is no testimony here that he made any assault upon any person in entering this building, if he did enter it. So I may add, in my judgment, that there is no testimony here which would justify a verdict of burglary in the first degree."

In *People* v. *Mayes,* 113 Cal. 618, 627 [45 Pac. 860, 863], the court said: "No error was committed by recalling the

jury, and giving an additional instruction in the absence of the defendant's counsel. The defendant was himself present, and the court directed that an exception be entered in his behalf to the instruction thus given. It is stated in the bill of exceptions that before giving the instruction the court caused his attorneys to be called and searched for in the courthouse, and also sent officers to look for them, but that they were not found.''

In the present case no exception was ordered by the court to be entered, but such entry was unnecessary, since the exception was preserved under the provisions of section 1176 of the Penal Code. It therefore appears that no error was committed by the trial court in the giving of this instruction during the absence of counsel.

[7] Appellant complains that in giving the above instruction the trial court erred in charging the jury as to matters of fact in violation of the provisions of article VI, section 19, of the constitution of the state of California. No authorities are cited by appellant in support of his contention that this instruction violated the constitutional inhibition against commenting on the facts. We find no error in this instruction. [8] It was the duty of the trial court to instruct the jury as a matter of law not to return a verdict of burglary in the first degree where the evidence would not support such verdict. (Pen. Code, sec. 1118; *People* v. *Welch,* 49 Cal. 174; *People* v. *King,* 27 Cal. 507 [87 Am. Dec. 95].) On the other hand, the court in no way indicated its opinion as to whether the jury should return a verdict of second degree burglary. The court defined burglary in the first degree and stated that all other kinds of burglary were burglary of the second degree. The jury was instructed that ''if you believe from the evidence beyond a reasonable doubt that the defendant did commit the crime of burglary,'' then it will be your duty to fix the degree. The jury was told that the building was ''alleged to have been entered''; that there was no testimony that defendant made an assault ''in entering the building, if he did enter it.'' There was nothing in this instruction to indicate any opinion of the court on the facts of the case, or to infer that the jury should return a verdict of burglary in the second degree.

[9]   Finally, appellant contends that the trial court erred in refusing the defendant's offer to prove his military service.   The defendant's counsel alleges that, on consultation with the court at the bench, he stated to the court that the defendant was wounded seven times during the World War and was rated by the United States Veteran Bureau as being forty-three per cent disabled.   This consultation does not appear in the record, and for that reason could not be considered on appeal.   No offer of proof followed the consultation with the court.   It does, however, appear in the record that counsel for the defendant wished to show that defendant was wounded several times and that his physical condition was affected thereby.   Defendant argues that this testimony was admissible because defendant offered evidence of an alibi showing defendant was at home within a few minutes of the time the shooting occurred, and that therefore it was a physical impossibility for him to have come from the scene of the crime to his home within this short space of time.   The testimony as to military service was immaterial.   There was no other offer made to show defendant's physical condition.   The fact that he had been wounded would not aid the jury unless defendant's present physical condition was shown.   A forty-three per cent physical disability means nothing unless the nature of the disability is. shown.

It is ordered that the judgment and order denying motion for a new trial be affirmed.

Conrey, P. J., and Houser, J., concurred.