[Crim. No. 1723.   Third Appellate District.—July 2, 1940.]

THE PEOPLE, Respondent, v. RUPERT N. DUNN, Appellant.

Wm. F. Herron, George C. W. Egan and Edward A. Cunha for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

TUTTLE, J.—Defendant was charged by an information in four counts with the crime of grand theft. (Sec. 484, Pen. Code.)

The first two counts were dismissed by the court. Count III charged in substance that "on or about the 12th day of December, 1938, . . . the defendant did . . . steal, take and carry away the sum of $250 . . . of the personal property of Fred M. Kay."

Count IV charged in substance that "on or about the 1st day of March, 1939, . . . the defendant did . . . steal, take and carry away the sum of $765 . . . of the personal property of Fred M. Kay."

After trial by jury the defendant was convicted upon counts III and IV. This is an appeal from the judgment of conviction and from the order denying a new trial.

Fred M. Kay, the principal witness for the People in this case, had been county clerk of Humboldt County for nearly twenty-five years. Prior to that time he had been a deputy in that office for twelve years. At the time of the trial of the instant case he was sixty-eight years of age. He had lived in Humboldt County practically all of his life. He ceased to be county clerk on March 14, 1939. Subsequently, on May 16, 1939, he was found guilty of embezzlement of public funds. The conviction was affirmed by this court. (*People* v. *Kay*, 34 Cal. App. (2d) 691 [94 Pac. (2d) 361].)

During the summer of 1938, appellant discussed with Kay the subject of the Lander Hill Mining Company. Appellant, so Kay testified, stated that he had a typewritten report on the mine; that it was a very wonderful mine, mostly composed of silver ore, and situate near Austin, Nevada. On

October 27th of the same year, the witness testified that the following conversation with appellant took place:

" . . . he said on October 27, 1938, he wanted some more money, and he said if I could raise a certain amount of money, I don't remember the exact amount now, that he would have 5000 shares of this Lander Hill Mining Company up here, and be able to turn it over to me the next day. And I asked him what we could do with that, and he says we could get some money on that stock; he says we could borrow money on it, plenty of money."

The next day Kay paid appellant $465 on account of the deal. On December 12, 1938, he paid appellant the further sum of $250 for stock in said company. The stock was never delivered to Kay, though he repeatedly demanded it, nor was the money returned. Kay stated that he had faith in appellant, who told him that he would be made president of the company at a salary of $500 per month. Appellant denied that any such payments were made to him, and stated that his reference to installing Kay as president of the company was made in a joking manner. The amount paid on December 12th was borrowed, Kay testified, from W. T. Leroy. The latter corroborated that testimony.

On the theory of the admissibility of other similar transactions to prove a common scheme and design, and also the intent of defendant to commit the crime charged, Kay was permitted to testify concerning a number of other transactions between appellant and him, starting with the year 1933. The first was an investment of funds by Kay in a scheme connected with a patent three-dimension camera lens. Appellant received the money but never received any stock. The next was a timber deal, in which money was paid to appellant. Kay received nothing for his investment. The next was a paint deal. Appellant told Kay that a Los Angeles woman had a formula for paint to be used on the bottom of ships. Kay invested some funds in the scheme with appellant, and that was the end of it. The next enterprise was a corporation to build airplanes which was being promoted by appellant and other parties. The result was the same as in the other proposals. Kay received nothing for his money. The next was a mining venture. Appellant said he and several others had taken over a mine in Siskiyou County; that a corporation had been formed, and stock would be issued;

that Kay would get a certain percentage of such stock. No stock was ever delivered. The next scheme was a chemical plant to grind up redwood stumps. Kay gave appellant funds to be used in the enterprise. The next was a powder deal. Appellant introduced to Kay a man who had invented a certain kind of powder, and stated that a corporation would be formed to manufacture it. Kay gave appellant funds to be invested in the stock. No stock was ever delivered. The foregoing facts appear in the testimony of Kay. All evidence of former transactions between Kay and appellant, except the camera deal, was stricken out on motion of defendant.

It is contended that the evidence is insufficient to establish any offense, for the reason that the testimony of Kay is so inherently improbable that it must be rejected as a matter of law. Appellant points out that the payments made by Kay to appellant were established by *oral* evidence alone. That a person of ordinary intelligence would require a written receipt under such circumstances. Therefore, appellant urges, the whole story of Kay is utterly worthless as a matter of law. The failure to demand and receive a receipt, appellant contends, coupled with the bad character of Kay, stamp the testimony as inherently improbable. The rule, where an attack of this character is made upon the credibility of a witness, is set forth by this court in the case of *People* v. *Jefferson,* 31 Cal. App. (2d) 562–566 [88 Pac. (2d) 238]:

"The justices of an appellate court should not substitute their judgment for the conclusions of the jury and the trial judge and reverse a cause on the ground that the evidence of the prosecuting witness is inherently improbable, unless it is so clearly false and unbelievable that reasonable minds may not differ in that regard. To justify a reversal of a judgment on that ground it should clearly appear that the verdict is the result of passion and prejudice."

Applying the foregoing rule, we cannot say that the story of witness Kay is inherently improbable, and that the verdict therefore lacks any substantial support. The fact that the witness had been convicted of a felony was a proper ground for impeachment—(sec. 2051, Code Civ. Proc.)—but it was for the jury to decide whether or not they would, in spite of his criminal record, still believe him. This witness

did many acts which most normal people would not have done, but that does not render his testimony unworthy of belief. Just because the average person would have demanded and received a receipt for any money paid out under such circumstances, is no justification for condemning as false the testimony of one who did not exact a receipt under the circumstances. These are essentially questions for the consideration of the jury. The credibility of the witness is not a question of law in this case. The case of *People* v. *Lamson,* 1 Cal. (2d) 648 [36 Pac. (2d) 361], merely restates the familiar rule that where there is no substantial evidence to support a verdict, it is the duty of an appellate court to set it aside. The evidence in that case was entirely circumstantial, and the court followed the general rule by holding that where circumstantial evidence is relied upon for a conviction, and where every circumstance relied upon as incriminating is equally compatible with innocence, there is a failure of proof necessary to sustain a conviction, and the question presented is one of law for the court. Here, the People rely, not upon circumstantial evidence, but upon direct evidence. It is not a matter of links in the chain of evidence, but whether or not the words of a witness are to be given any credence. It cannot be said that the Lamson case in any manner abrogates the old rule that the jury are the sole judges of the facts and of the credibility of the witnesses, and that if there is any substantial evidence to support a verdict, it will not be disturbed by an appellate court. We find such evidence in the record before us.

▉ Appellant contends that "no conviction of either embezzlement or false pretenses can be sustained because the information charges larceny and nothing else". He states that one cannot be charged with one crime and convicted on a showing that he has committed another. Under the definition of *theft,* there is included the crimes of larceny, obtaining money, labor or property by false pretenses, and embezzlement. (Pen. Code, sec. 484.) Section 952 of that code provides that " . . . In charging theft it shall be sufficient to allege that the defendant 'unlawfully took' the labor or property of another". It is clear that the information here meets the requirement of the latter section. The question is not a novel one, but has been definitely settled adversely to the contention of appellant in the following cases:

*People* v. *Fewkes,* 214 Cal. 142 [4 Pac. (2d) 538] ; *People* v. *Plum,* 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322] ; *People* v. *Mason,* 12 Cal. App. (2d) 84 [55 Pac. (2d) 249] ; *People* v. *McNeil,* 27 Cal. App. (2d) 353 [81 Pac. (2d) 243] ; *People* v. *Robinson,* 107 Cal. App. 211 [290 Pac. 470]. We therefore hold that under the indictment before us, if the evidence showed defendant to have committed any or all of the three included offenses mentioned above, he could have been convicted of grand theft. The information as set forth above charges the said three offenses under the express statutory form set forth in section 952 of the Penal Code. The only case relied upon by appellant is *People* v. *Walther,* 27 Cal. App. (2d) 583 [81 Pac. (2d) 452]. There the defendant was convicted under a count in an information which attempted to set forth the crime of obtaining money by false pretenses. (Pen. Code, sec. 532.) This court held that the information did not charge that crime, for the reason that it failed to specify any act or statement of the defendant constituting the alleged crime. No attempt was made in that case to charge the crime of theft under the provisions of section 952 of the Penal Code. Neither did the court there take into consideration the provisions in said section that "It, (the count in the information or indictment), may be in the words of the enactment describing the offense." The discussion of this point may very properly be concluded with the following excerpt from *People* v. *Plum, supra*:

"Under the pretense of informing the defendant of the nature of the charge against which he was called upon to defend, it was necessary, at the ancient common law, to describe the means by which the homicide was committed, and the nature and extent of the wound and its precise locality ; from which it necessarily followed that a trifling variance between the proof and the allegation frequently defeated a conviction, no matter how manifest the guilt of the defendant. *It was a long time before legislators and judges discovered that this rule had nothing but the most flimsy pretext to support it. If the defendant is guilty, he stands in need of no information to be derived from a perusal of the indictment, as to the means used by him in committing the act or the manner in which it was done, for as to both, his own knowledge is quite as reliable as any statement contained in the indictment. If he is not guilty, the information could not aid in the prepa-*

*ration of his defense.* (*People* v. *King,* 27 Cal. 507–510 [87 Am. Dec. 95]; *People* v. *Cronin,* 34 Cal. 191, 200; *People* v. *Fowler,* 178 Cal. 657, 661 [174 Pac. 892].)''

■ Appellant next complains of a ruling of the trial court which denied him the right to make a statement at the close of the opening statement by the prosecution, but which permitted him to make such a statement when the prosecution had rested. He cites no authorities. There is nothing in the ''Order of the Proceedings'' set forth in the Penal Code (sec. 1093), which gives the defendant the right for which he here contends. It was a matter committed to the sound discretion of the trial court, and he cannot say here that such discretion was abused. Neither can we find that the ruling was prejudicial to defendant.

■ It is contended that the trial court erred in refusing to exclude any evidence tending to show the commission of the offenses of embezzlement and obtaining money by false pretenses, and upon the ground that the indictment stated but one offense—larceny. This question has been fully discussed above. But one crime was expressly charged in each count—theft. Under that charge, evidence of the included offenses was clearly admissible.

■ During the testimony of Kay, the trial court admitted in evidence the following writing:

''October 27, 1938. Jack told me today that tomorrow I would receive 5,000 shares of —— stock, par value $100 per share and that I could transfer 2500 shares to ——, and receive $150; that within thirty days if I want to sell the remaining 2500 shares that I can get from a hundred and fifty thousand to two hundred thousand dollars for them. Fred M. Kay.''

The witness testified that he made the memorandum on the day he had a conversation with defendant. While the witness had the right to refresh his memory from such memorandum, it is doubtful if the document itself was admissible as evidence. It is unnecessary to discuss the matter further, as it appears that the witness, prior thereto, testified to all the facts contained in the memorandum. An identical situation arose in the case of *People* v. *Allen,* 37 Cal. App. 180–188 [174 Pac. 374], where this court said:

''Under section 2047 of the Code of Civil Procedure, a witness may 'refresh his memory respecting a fact, by any-

thing written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing.' But where the witness can and does testify fully as to the facts without resort to his memorandum, we do not think he can be corroborated by the introduction of his memorandum. We think, however, that the ruling was without prejudice. Section 4½ of article VI of the Constitution would seem to apply here.''

We can see no prejudice resulting from the ruling.

During the examination of Kay, on rebuttal, and over the objection of appellant, the trial court admitted in evidence a written memorandum made by Kay containing numerous items of money and a date opposite each item. The witness testified that they represented payments made to appellant in connection with a number of transactions between them. Elsewhere, the witness had testified that about one-half of his income, covering several years, and amounting to $7,500, had been paid to appellant. The items admitted covered the same ground, but contained more detail. Assuming that the list of items was not admissible, no prejudice resulted from the ruling. The matter was already substantially in evidence, though not in the same form. What we have said also applies to a small memorandum book containing items showing similar payments by the witness to appellant. All of such items were included in the $7,500 total mentioned.

It is contended that the evidence is insufficient to prove theft or any of the crimes included in the charge, to wit: Larceny, obtaining money by false pretenses, and embezzlement. We are satisfied that the evidence sustains a conviction of theft committed by means of embezzlement. The latter offense is defined as ''the fraudulent appropriation of property by the person to whom it has been entrusted''. (Pen. Code, sec. 503.) The jury could reasonably conclude from the evidence that the sums of $250 and $765 were entrusted to appellant for the purpose of purchasing stock in Lander Hill Mining Company, and that he fraudulently appropriated such money. The stock was never purchased or delivered. There is evidence in the record of a similar scheme used by appellant to get money from Kay. It may be designated as the ''Griffith Camera Lens'' deal, and is mentioned

above. There is also the testimony of parties who loaned money to Kay, which tends to corroborate his testimony. According to the record, Kay entrusted money to appellant on two occasions to be used for the purchase of stock in Lander Hill Mining Corporation. The stock was never delivered, nor was the money returned. In our opinion a plain case of embezzlement was made out. Defendant acted as agent for Kay, and it was his duty to use the money entrusted to him in payment of the stock. The following cases, based upon similar transactions, hold that embezzlement was the proper charge to make: *People* v. *Meadows*, 199 N. Y. 1 [92 N. E. 128]; *State* v. *Monahan*, 50 Nev. 27 [249 Pac. 566]; *State* v. *Cooke*, 130 Or. 552 [278 Pac. 936]. Appellant urges that the testimony shows that the money was not handed to appellant for any specific purpose; hence the crime of embezzlement was not proven. He relies upon a statement made by Kay on a former occasion, from which the jury might reasonably understand that the use to which the money was to be applied was not mentioned when the payments were made. On the other hand, at the trial of this action, Kay testified that appellant said the stock would be delivered "the next day". If Kay's testimony on the point was contradicted by a former statement, it was still a matter for the jury to say whether he was telling the truth or not in testifying before them, and we cannot disturb any conclusion which they may have reached on the question of the credibility of the witness.

It is contended that evidence of former transactions between the parties was inadmissible. All testimony of that character, except that relating to the camera deal, was stricken out on motion of defendant. We believe that all of such evidence was admissible. It covered a period of several years, and clearly disclosed a scheme or design upon the part of appellant to mulct Kay of his money. Such evidence is justified under the rule that:

"Where several crimes are connected as part of one scheme or plan, all of the same general character, and tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, and thus directly tending to show logically that the crime in question was a part of such common scheme. If the general crimes are part of a chain of cause and in consequence so linked as to be

necessarily connected with the system or general plan, they are admissible.'' (8 Cal. Jur., p. 69, sec. 173.)

The rule was applied in *People* v. *Ruef*, 14 Cal. App. 576 [114 Pac. 48]. It is very thoroughly discussed in *People* v. *McGill*, 82 Cal. App. 98 [255 Pac. 261].

█ It is urged that the district attorney was guilty of prejudicial misconduct. After an examination of the record, we cannot say that the district attorney went beyond the limit of propriety and fairness, or that he did anything to wilfully injure or prejudice the defendant in the eyes of the jury. (*People* v. *Wiley*, 33 Cal. App. (2d) 424 [91 Pac. (2d) 907].)

█ It is urged that sections 484 and 952 of the Penal Code are unconstitutional as being in violation of the due process clause of the Constitution of the United States (Fourteenth Amendment), in that an information drawn thereunder gives the defendant no information as to the nature of the accusation against him. This question was decided adversely to appellant in the case of *People* v. *Robinson*, 107 Cal. App. 211 [290 Pac. 470], where a hearing was denied by the Supreme Court. The motion in arrest of judgment was therefore properly denied.

Other points are raised as grounds for reversal. We have examined them and find such contentions are so obviously without merit as to require no discussion of them.

The judgment and order denying motion for new trial are, and each of them is, affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 17, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 30, 1940.