[Crim. No. 8038.   Second Dist., Div. Four.   May 16, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ZEDRICK BERRY ROY, Defendant and Appellant.

Leighton G. Long, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Bruce A. Thompson, District Attorney, and Herbert L. Ashby, Deputy District Attorney, for Plaintiff and Respondent.

BURKE, P. J.—James Johnson and Zedrick Berry Roy, appellant, each were charged by an information as follows: Count I with burglary, on or about April 21, 1961, of the Casa de Conejo housing tract in Newbury Park; Count II with burglary, on or about the same date, of the Casa de Cavalier housing tract in Camarillo; Count III with grand theft of certain plumbing supplies, on or about the same date, from Nat Taylor & Sons Plumbing, Inc.; and in Count IV with the crime of conspiracy, together with one Walter Lee Jackson, to commit burglary and grand theft, on or about the same date. With respect to the count of conspiracy two overt acts were charged, the first by defendant Johnson who on or about that date did go to the Casa de Conejo tract in Newbury Park, and the second by appellant Roy who did go to the Casa de Cavalier tract in Camarillo. Appellant Roy was charged with three prior felony convictions which were admitted.

In a joint trial by jury both defendants were convicted on all counts. Motions for a new trial were denied. Defendant Johnson appealed, but pursuant to his own motion his appeal was dismissed on December 12, 1961. Appellant Roy appeals from the judgment and from the court's denial of his motion for a new trial.

Following is a brief résumé of the facts. The foreman of a plumbing contractor in an unfinished housing tract known as the Casa de Conejo tract in Newbury Park had certain supplies stored in a garage at the tract. On the afternoon of April 20, 1961, this foreman noticed several Negroes in a white 1960 Lincoln automobile slowly driving through the area. Becoming suspicious he wrote down the license number of the car. It was later determined that the car was registered to defendant Johnson's wife. The foreman left work at approximately 4:20 p. m. At that time he set the burglar alarm on the front door of the garage in question and locked the doors.

At about 6:00 p. m. on Thursday, the 20th of April, Walter Lee Jackson rented a covered moving van, number 7107, from the California Truck Rental Co. in Los Angeles. He listed his address as 2639 Lantana Street in Compton. Later that

evening a covered van and a red and white 1961 Mercury were parked at 97th Street and Main in Los Angeles near a card-playing establishment called the "Skin House." Johnson, in the presence of appellant, had a conversation with Bud Cox, a card dealer at the Skin House, in which he asked to borrow two dollars, stating that he wanted to go to Ventura to attend to some business. Later, Johnson and Jackson were overheard at the Skin House asking appellant to go with them to Ventura. However, the three left the Skin House together.

At about 3 a. m. on the following morning, April 21, Ventura County Sheriff's detectives patrolling the Casa de Conejo housing tract area saw a moving van parked in a field adjacent to the tract. Upon investigation, one of the officers observed two shadowy figures running in a crouched position in the general direction of the truck. He called to them to stop and when they did not he fired several shots in the air. Defendant Johnson was apprehended but the other party was not found. Johnson said he didn't know where his partner went. He admitted riding in the van and described the driver of the vehicle to one of the officers.

The description was broadcast and at approximately 5:30 a. m. appellant, driving a red and white 1961 Mercury, was stopped on Highway 101 near the Conejo tract. The driver, appellant Roy, told the deputies he was on his way to work. He exhibited a temporary driver's license which listed his address as 2639 Lantana Street, Compton. After obtaining permission from Roy to search the vehicle, one of the officers found a key on a ring with a brass tag with the number 7107 on it in a pocket in a pair of trousers in the back seat of the car. Roy stated that this was the key to his tool box on the gunite rig on which he worked. There were also a number of pairs of gloves. When asked for the key to the trunk Roy stated he had borrowed the car from his girl friend and that she had only given him the ignition key; that he had no key to the trunk.

At the time of this interrogation of appellant defendant Johnson was seated in a police car parked ahead of the car being driven by Roy. Roy was asked if he knew Johnson. He said he did not. Roy was then released and the deputies returned to the tract. Shortly thereafter they received information that the van had been rented by Walter Lee Jackson, address 2639 Lantana Street, Compton, which had been the address given on Roy's temporary license. It was then noted that the number on the van, 7107, was the same as the number

on the brass tag on the key which appellant Roy had said was the key to his tool box on the gunite rig. An all-points bulletin was put out for appellant.

In the meantime, a burglary of the Casa de Cavalier tract in Camarillo had been discovered. Boxes of plumbing supplies worth $200 had been taken together with certain hardware and trim worth over $1,000 and nine garbage-disposal units worth $40 apiece.

At approximately 6:40 a. m. appellant was apprehended by the Oxnard police. Later that same morning the 1961 Mercury which Roy had been driving was again searched. This time the trunk was forced open and the hardware and garbage disposals stolen from the Casa de Cavalier tract were found in the trunk. It was also noted that the light buttons in the door well which operate the vehicle's interior lights were taped down so the lights would not go on upon the doors being opened. An ignition key to the moving van was found in the Mercury's glove compartment.

It would serve little purpose to review in detail the alibis of defendant Johnson and appellant Roy and the conflicting statements made by them to the various officers who interviewed them in the course of the investigation. While Roy originally denied knowing Johnson, later he admitted that he knew of him. There was substantial evidence that they had known one another for some time and had been together on many occasions. Both Jackson and Roy had listed 2639 Lantana Street in Compton as their address. Notwithstanding this fact appellant Roy had denied knowing Jackson and stated he had only heard of him. It is a single-family residence and appellant subsequently admitted he did not live there.

Appellant testified in his own behalf. Defendant Johnson did not take the stand. Appellant stated the reason he was in Ventura County at the time of his arrest was that he was going to work for the Johnson-Weston Gunite Company; that he had worked for them on and off for the last seven or eight years and as recently as a month or six weeks prior to his arrest. An employee of the latter company in charge of payroll records testified she found no record that appellant had ever worked for the company. Roy had said the job he was to work on was in Ojai and the company employee stated it did not have a job going in the Ojai area on the date in question. Roy had said the key with the brass tag marked 7107 was the key to his tool box on the gunite rig, whereas the com-

pany employee testified that the rigs have numbers in series of three digits, not four, and that there was no rig with the number 7107. Appellant denied he was at either tract; however, a forensic chemist for the Los Angeles Sheriff's Department testified in his opinion that footprints found at the Casa de Cavalier tract which were preserved in a plaster cast were originally made by the right shoe belonging to Roy. Appellant admitted the shoe in question was his.

It is contended on appeal that the court erred in admitting certain evidence of other offenses and that the evidence is insufficient in regard to Counts I and IV of the information.

Testimony was admitted concerning seven separate and distinct incidents pertaining to other offenses not directly related to the particular offenses with which the defendants were charged but admitted by the court for the limited purposes of showing *modus operandi* and common plan and identity of the burglars who committed the crimes charged. Of these seven incidents three had no application to appellant. His counsel briefly cross-examined the witnesses who testified concerning those three incidents and in each instance they cleared Roy of any involvement therein. The court also repeatedly instructed the jury that evidence stricken as to one defendant was not to be considered as to that defendant.

Appellant asserts that evidence of these incidents, stricken as to him, might have been considered by the jury under the standard joint responsibility of coconspirators instruction given by the court; that once the jury found that a conspiracy existed and Roy was a member thereof "the jury was then able to consider Roy responsible for any acts and declarations of Johnson." The two defendants and Walter Lee Jackson were charged with conspiring on or about April 21, 1961, to commit burglary and grand theft. The overt acts charged were limited to Johnson going to one tract and Roy to the other.

The court instructed[1] the jury in its charge that no evidence of an act or declaration of an alleged conspirator shall be binding upon or considered against any other alleged conspirator unless and until, independent and without the aid of such evidence, a conspiracy as alleged has been proved to have been in existence at the time of the particular act or declaration. The court further instructed the jury that no alleged conspirator shall be held criminally responsible as such for any act of another alleged conspirator when the only

---

[1] CALJIC Instructions 932 and 935.

substantial evidence purporting to indicate an agreement between them is evidence of the acts and declarations of the latter. The testimony concerning the seven other incidents all pertained to events which took place prior to April 21, 1961, when the Ventura County tract offenses took place. Thus the jury was instructed not to consider Roy responsible for any of the acts and declarations of his codefendant merely because it found that a conspiracy existed on or about April 21, 1961, to commit burglary and grand theft. ▆▆▆ The jury was instructed to consider only the acts and declarations made during the existence of the conspiracy charged. The jury is presumed to have followed the various admonitions and instructions of the court. (*People* v. *Burkhart,* 211 Cal. 726, 733 [297 P. 11].)

All of the remaining four incidents, in which testimony admitted by the court directly involved the appellant Roy, pertained to burglary. The first, the Hawaiian Gardens incident, pertained to an alleged burglary in a tract of new homes which occurred on February 28, 1961. The testimony was that appellant Roy and one Gray forced open the double door of a storage garage at the tract enabling Roy to remove six large cartons of door locks. These were loaded into the trunk of a vehicle and while Roy and his companion were looking for a person referred to as "Rocky" so that they could sell him the locks they were apprehended by the police. Roy had with him two pairs of gloves and a flashlight. They first denied and later admitted the burglary. Roy told the police that Johnson was the head of a burglary ring and offered to make a deal with them to find a garage containing building materials and notify Johnson and the gang so they could be caught by the police as they attempted to burglarize the store. Roy also stated at that time that he knew Walter Lee Jackson, charged to be a coconspirator in the Ventura tract burglaries, and that Jackson was a member of the gang. On cross-examination it was revealed that Roy had pleaded not guilty to the charge and that there was presently a trial pending.

The second incident was developed through testimony of one Percy Roberts and pertained to burglaries in the Cinderella tract in the San Fernando Valley in late 1956 or 1957 in which Roberts testified that defendant Johnson, appellant Roy and he participated. Roberts stated that on three different occasions they took locks and electrical appliances from locked storage garages in the tract; they pried the locks off the garage

doors and loaded the materials into a truck. Roberts testified that in 1957 he, along with Roy and Johnson, sold building materials taken from housing tracts to a person named "Rocky" at Rocky's home.

The third incident pertained to a La Mirada tract burglary in 1957 which was testified to by Roberts who asserted that he, Johnson and appellant Roy participated. Roberts stated that after driving through the tract several times on different nights they returned with a rented van and while Roberts stood watch, Johnson and appellant Roy entered a storage garage and took thirteen stoves, five hot water tanks and other plumbing equipment.

The fourth incident in which appellant Roy was allegedly involved was developed through the testimony of one Rocco Occhiuto. The latter testified that in 1957 and 1958 he knew Johnson, appellant Roy and Percy Roberts and had bought building supplies from them; that the materials were delivered to him in boxes; that the names of the tracts from which they were taken were still on the boxes; that the defendants had a landscaping company and would work at a new housing tract in the daytime so they could spot the storage garages and find out where everything was so they could come back at night and take it; that at night they would return with a rented truck, shear off the locks of the garages in which the material was stored, load the truck and take the stolen materials to "Rocky" (Rocco Occhiuto). The latter testified he was subsequently caught and convicted of receiving stolen property.

The similarity between the *modus operandi* involved in the particular crimes of which appellant Roy was convicted in this case and of the incidents testified to is significant and discloses a common plan running through all of the offenses. In each of the incidents concerning appellant Roy it was apparent he was working with at least one other person and that person was usually his codefendant Johnson. The offense involved was always that of burglary and theft. It always concerned building materials of one kind or another. All of the offenses pertained to new housing tracts and the materials taken were always removed from storage garages in such tracts. Usually a rented truck was used to convey the materials taken. The appellant never used his own vehicle and usually "cased" the job first.

The similarity between the prior offenses and the crimes charged against appellant for which he was convicted is much stronger than that required by the courts in the cases of

*People* v. *Johnson,* 195 Cal.App.2d 825 [16 Cal.Rptr. 290], *People* v. *Gregor,* 141 Cal.App.2d 711 [297 P.2d 734], *People* v. *Grimes,* 113 Cal.App.2d 365 [248 P.2d 130], and *People* v. *McGill,* 82 Cal.App. 98 [255 P. 261]. Based upon the precedents established in those cases there can be no question that the testimony of prior offenses qualifies for admission in this case. ▮ In the recent case of *People* v. *Johnson, supra,* 195 Cal.App.2d 825, 827, the court stated: "It is well settled that evidence of other criminal acts may be introduced into evidence if it shows a common scheme or plan. ▮ ' "It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. ▮ But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion." ▮ . . . When a defendant's conduct in connection with the previous crime bears such similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates that the conduct was directed by design.' (*People* v. *Peete* (1946), 28 Cal.2d 306, 315, 317 [169 P.2d 924].)"

In *People* v.. *Gregor, supra,* 141 Cal.App.2d 711, the defendant was charged with two counts of burglary. The first burglary charged involved the burglary of a radio store. The store was broken into by means of a hole cut in the ceiling from a room above. The safe had been broken into and the combination lock broken off. The second charge involved the burglary of a service station. Entry was made by cutting a hole through a steel wall from one of the restrooms into the lubrication room, which, in turn, led into the office. The safe had been broken into and its dial knocked off. The prosecution introduced evidence of a prior unlawful act involving another burglary. Entry was secured through a skylight. Here, the safe had been pried open. The court held that the evidence of the prior unlawful act was admissible to show intent and common plan and that in the burglaries the *modus operandi* was similar. ▮ The court stated the rule as follows on page 717: ". . . Of course, evidence of other crimes is admissible to show a common pattern, plan or scheme, or where

such evidence helps to show motive, intent, premeditation, guilty knowledge or malice. [Citing cases.]"

In *People* v. *McGill, supra,* 82 Cal.App. 98, where the defendant, a window washer, returned to the store at night to commit burglary, a codefendant was permitted to testify that on six previous occasions he and the defendant had burglarized that store. The evidence of these prior offenses was held to be properly admitted on the theory there was similarity in the method employed in connection with the other offenses and that the crime charged was part of a common scheme.

Similarly, in *People* v. *Grimes, supra,* 113 Cal.App.2d 365, evidence of other burglaries of drug stores during a period of eleven years was admitted to show common plan, scheme, design or *modus operandi,* all of which tended to show the defendant was guilty of the acts with which he was charged.

■ The landmark case on the question of admissibility of evidence of prior offenses is *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]. On pages 314-315 the Supreme Court sets forth the rules governing the introduction of such evidence: ". . . It is settled in this state, however, that except when it shows merely criminal disposition (*People* v. *Cook,* 148 Cal. 334, 340 [83 P. 43]; *People* v. *Glass,* 158 Cal. 650, 658 [112 P. 281]), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. ■■ 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Cases cited.]"

■ Appellant contends that the testimony concerned other incidents which had not resulted in convictions. The cases show that it is not necessary that a conviction has resulted. (*People* v. *Baker,* 25 Cal.App.2d 1 [76 P.2d 111]; see also *People* v. *Fox,* 126 Cal.App.2d 560 [272 P.2d 832], and *People* v. *Raleigh,* 83 Cal.App.2d 435 [189 P.2d 70].)

Appellant relies heavily upon *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7], and *People* v. *Channell,* 136 Cal.App.2d 99 [288 P.2d 326]. It would serve little purpose to compare the facts in these two cases to those in the case at bar. These cases are distinguishable for two reasons. First, in neither case was there sufficient similarity between the two incidents

to show a general plan or scheme. Secondly, in both of the cases the defendant was not clearly shown to have been the person who committed the previous offenses.

A close reading of the transcript of the trial of the instant case, which lasted some twelve days and in which 41 witnesses testified, reveals that the trial judge exercised the extreme caution required of him in considering the admissibility of the testimony concerning other offenses. He afforded counsel frequent opportunities to address the court in chambers or out of the hearing of the jury in advance of admitting the testimony concerning such other offenses and carefully reviewed the authorities cited to him. Upon each occasion when properly so requested by counsel the trial judge directed the jury not to consider the testimony as to one or the other of the defendants where clearly it was not applicable to such defendant or defendants.

Appellant asserts the evidence was insufficient to support his conviction of burglary of the Casa de Conejo tract under Count I and of conspiracy as charged under Count IV. These contentions are without merit as can be seen from the review of the evidence.

Appellant received a fair trial and his conviction was based upon substantial evidence. The judgment of conviction and order of the trial court denying the motion for a new trial are affirmed.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied June 7, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 11, 1962.