[Crim. No. 924.   Fourth Dist.   Sept. 29, 1952.]

THE PEOPLE, Respondent, v. JOSEPH DEAN GRIMES, Appellant.

J. David Hennigan for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—Defendant was convicted by a jury of burglarizing a drugstore in Riverside. He admitted three prior convictions of felonies. Motions for an advised verdict and mistrial were denied. Defendant now contends on appeal: (1) that the evidence is insufficient to sustain his conviction; and (2) that the court prejudically erred in admitting evidence of other crimes committed by defendant. ▇ In the Arlington district of the city of Riverside the police officers found that the bottom pane of glass in the side door of a drugstore owned by a Mr. Heeres had been kicked or smashed in and the bolt lock pulled back. Entrance to this store was gained in this manner. Two cash registers were found open and the $15 change left in each of them was missing, excepting the pennies and half dollars which were in the rear compartment of the drawer. Several drawers in the prescription room had been pulled open. Two bottles of benzedrine tablets, issued only on prescription, were missing. The stubs of several burned matches were found on the floor. Next to the drugstore, in the rear alley, is Housty's Café. Defendant had been in the drugstore and café on several occasions. A merchant patrolman had checked the drugstore that evening about 9:30. The screen door was hooked and there was no broken glass in the door at that time. A bartender at Housty's saw defendant in his place

of business about 6 p. m. Defendant was in and out at intervals up to one-half hour and on about six different occasions. He had been drinking but not to excess. Defendant called a cab and left at about 11 p. m. The cab man drove him to a liquor store, and after obtaining a bottle, defendant went to his brother's house. Earlier that evening, the cab man took defendant from Housty's to the home of other relatives. A service station attendant saw defendant about 8:30 p. m. when defendant brought his car to the station for some repair work. While the work was being done defendant walked in the direction of Housty's and returned in about 20 minutes. The car was not repaired and defendant departed without it.

An acquaintance of defendant testified he was in the café about 9 p. m., saw defendant at the bar, and that defendant left by the front door around 10 p. m.; that he left by the rear door and walked around the front to his parked car; that he saw defendant standing at the side door of the drugstore facing it with his right hand reaching for the door; that defendant did not turn his head; that he started his car and he again looked and saw defendant was still standing in the same position; that he drove away and did not see the defendant again that evening.

The owner of another café saw defendant at his place of business about 1 a. m. and testified that he saw defendant and his brother stacking up nickels, dimes, and quarters on the bar. The defendant asked him to change them for four or five one-dollar bills. Defendant bought drinks and food amounting to $1.75 and paid for them in nickels and dimes. Defendant, at one time, had a waitress obtain a dollar bill for some small change, and defendant tipped her with four nickels. Defendant was arrested on December 17th. His right hand had been cut and was bandaged. The officer inquired of him as to the cause and he told him he had injured it while working on his car. He told another officer he cut it on the fan of the car, and on January 3, 1952, he told another officer he cut it on the pan while working on the transmission. Other witnesses stated that they did not notice any cut on defendant's hand the evening of the burglary. Officers went to defendant's residence and conversed with his wife. She went to the bedroom and returned with a bottle containing benzedrine tablets. It was the same kind of bottle the tablets came in when purchased from the wholesalers and was not the kind used by drugstores in

dispensing the tablets.. The druggist testified he had a cost mark on all such bottles. None appeared on this bottle, but one witness testified there was evidence that it had been erased. The officers took the bottle to defendant in jail, put it on the table, and said nothing. Defendant commenced to laugh and said in effect: "Oh, I see my wife is trying to put something over on me. She can't even testify against me."

A mere reading of the evidence, when considered as a whole, together with the allowable inferences, clearly demonstrates that there was sufficient evidence to support the verdict. (*People* v. *Goodall*, 104 Cal.App.2d 242 [231 P.2d 119] ; *People* v. *Mercer*, 103 Cal.App.2d 782 [230 P.2d 4] ; *People* v. *Grischott*, 107 Cal.App.2d 631 [237 P.2d 712] ; *People* v. *Kepford*, 10 Cal.App.2d 128 [51 P.2d 429] ; *People* v. *Carroll*, 79 Cal.App.2d 146 [179 P.2d 75].)

A close question arises in reference to the other claim. Counsel for defendant, who tried the case and who has been appointed by this court to represent the defendant on this appeal, has ably presented defendant's cause. At the trial defendant admitted the prior convictions of felonies as charged, and did not testify. The prosecution offered evidence of similar offenses to that charged, under the claim that such offenses were similar in their commission, and the *modus operandi* was so much like the method used in the instant case as to be admissible under the general principle enunciated by our Supreme Court in *People* v. *Peete*, 28 Cal. 2d 306 [169 P.2d 924], and cited cases. The court permitted the proffered evidence, under an instruction limiting the consideration of the evidence by the jury for the purpose only of showing the identity of the person who committed the alleged crime, if it was committed; that the defendant entertained the necessary intent; and that there existed in the mind of the defendant a plan, scheme, system or design, for the commission of the offense, and not to prove other and distinct offenses.

Evidence was taken that defendant, in May, *1941*, broke into Stevenson's Drugstore in Riverside, between 11 p. m. and midnight, by kicking out the glass in the side door and crawling in ; that a certain amount of change was taken from two cash registers therein, as well as a bottle of whiskey ; that defendant later engaged a taxicab and consumed about half of the liquor. Further evidence was produced that on November 19, 1941, he attempted to burglarize the Banks' Drug-

store in Riverside between 10 and 11 p. m. by kicking in the glass door at the bottom but that he was, for some reason, frustrated in his efforts and that that same evening he did burglarize the Fairmount Drugstore, and gained entrance by kicking out the glass in one of its two doors; that he took the change on hand in the cash registers and had some drinks; that he then called a cab and at the Park Inn he exchanged six half dollars for three one-dollar bills.

It was then shown that on August 24, 1943, during the evening, defendant was seen beating on the glass door of the Corona Hardware store. After a chase he was apprehended. He apparently had $50 in his possession and quite a sum of it was in small change. Defendant at that time had already burglarized the Stewart's Pharmacy near there by kicking out the glass in the bottom part of the locked door and took money from two cash registers. Some of this evidence consisted of signed statements and admissions or confessions by the defendant of these burglaries.

The prosecution then offered in evidence, over objection, as before, the testimony of the clerk of the court, reading into evidence the information charging defendant with the crime of attempt to burglarize the Banks' Drugstore, the burglary of the Jones Drugstore in 1941, the burglary of the Stewart's Pharmacy in 1943, and defendant's plea of guilty to these charges.

It is defendant's contention that the prior conviction of burglary on August 28, 1943, as charged in the information and admitted by defendant, should not have been admitted in evidence since defendant admitted this charged prior conviction. He cites in support of this argument section 1025 of the Penal Code which reads in part that in case the defendant answers "that he has suffered a previous conviction, the charge of the previous conviction must not be read to the jury, nor alluded to on the trial." There is no merit to this argument if the facts of the previous offense come within the exception hereinafter noted. (*People* v. *Peete, supra,* p. 319.)

Defendant concedes that evidence of other crimes is permitted to prove common scheme, system, design, and intent, but avers that past cases indicate such practice is permitted only in relation to crimes committed in the same series; that there is no sufficient evidence of similarities in scheme, system or design in the offenses here established, and they do not contain such common elements peculiar to the *modus oper-*

*andi* of this defendant which would make it relevant here to admit the evidence herein referred to and, if so, the rule does not permit such evidence dating back 11 years. He cites such cases as *People* v. *Hobbs,* 37 Cal.App.2d 8 [98 P. 2d 775]; *People* v. *Guthrie,* 103 Cal.App.2d 468 [229 P.2d 841]; *People* v. *Bartnett,* 15 Cal.App. 89 [113 P. 879]; and the dissenting opinion of Mr. Justice Carter in *People* v. *Peete, supra.*

The general rule, so recently applied, is stated in the majority opinion in *People* v. *Peete, supra,* and as reviewed in *People* v. *Burns,* 109 Cal.App.2d 524, 534 [241 P.2d 308], which latter case recites, at page 535:

"*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], contains a long list of California cases and certain law review articles on the subject of the admissibility of evidence of other crimes than the one upon which the defendant is being tried. It sets forth the exception to the general rule that evidence of another and distinct offense is not admissible. It points out that such evidence may not be admitted merely to show criminal disposition. ' ". . . But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion.'' ' . . . 'The relevance of evidence that proves crimes other than that charged, however, must be examined with care.' '' It concluded that "in the Peete case the evidence of the prior crime coupled with that of the one for which the defendant was on trial indicated strongly that the second murder was part of a scheme by defendant to acquire property by murder." It then cites *People* v. *Cassandras,* 83 Cal.App.2d 272 [188 P.2d 546], concerning the exceptions to the general rule and says: " 'In recent years these exceptions have been so extended that the rule appears to have become the exception and the exceptions the rule.' '' It was there recognized that the one exception that is well settled in the law is that evidence of other crimes is admissible to show a general pattern, scheme, design, project or plan of which the two crimes are a part, and that evidence in relation thereto must be restricted to other acts with a sufficiently high degree of common features with the act charged to warrant the inference that if the defendant committed the other acts he probably committed the act charged.

Several cases are cited in which the general pattern, scheme or plan exception has been held applicable insofar as previous

burglaries, larcenies, and thefts are concerned, under circumstances similar to the one charged, such as *People* v. *Tibbitts,* 35 Cal.App.2d 669 [96 P.2d 812] ; and *People* v. *King,* 4 Cal. App.2d 727 [41 P.2d 593]. In *People* v. *McGill,* 82 Cal.App. 98 [255 P. 261], the defendant was charged with the crime of burglary. The evidence indicated that he and another were outside window washers at a store in Los Angeles. They returned in the evening and entered the store building on the third floor by way of the fire escape and defendant was apprehended as he was leaving the building. The prosecution offered the testimony of the codefendant who testified that the defendants had six times previously entered that store *and other stores* and had taken goods therefrom. A police officer testified, over objection, that McGill admitted that the two defendants entered the store on three other occasions and took 30 or 40 pieces of merchandise on each occasion and that they had already made arrangements to dispose of some garments at $1.00 apiece. The court held that evidence of offenses, other than that charged against the defendant, was properly admitted under the facts shown in that case upon the theory that there was shown some similarity in the method and system employed by the defendants in the offense charged to those employed by them in connection with the other offenses. (See, also, *People* v. *James,* 40 Cal.App.2d 740 [105 P.2d 947] ; *People* v. *Lapierre,* 205 Cal. 462 [271 P. 497] ; *People* v. *Ross,* 98 Cal.App.2d 805, 809 [221 P.2d 280] ; *People* v. *Coefield,* 37 Cal.2d 865, 870 [236 P.2d 570].)

■ The main question here presented then is whether the facts pertaining to the other offenses allowed to be proved, show a general pattern, scheme, or plan, and are sufficiently similar and possess a sufficiently high degrees of common features with the act charged to warrant the inference that if the defendant committed the other acts he committed the act charged. Usually this is a primary question for the trial court to determine. (*People* v. *Peete,* 28 Cal.2d 306, 316 [169 P.2d 924] ; *People* v. *Albertson,* 23 Cal.2d 550, 577 [145 P.2d 7].) It apparently believed that such evidence should go to the jury for its enlightenment under the limited instruction that it could be considered only for the purpose indicated.

■ It will be presumed that the jurors were true to their oaths and followed the various admonitions and instructions of the court. (*People* v. *Burkhart,* 211 Cal. 726, 733 [297 P. 11].)

■ We will compare some of the facts shown pertaining to the other offenses with the facts pertaining to the offense charged. The charge here indicated involved the offense of burglary. Likewise, the other acts charged involved similar offenses or attempts to commit them. This offense involved a drugstore. So did the others with the exception of one hardware store. The *modus operandi* in the gaining of admission to all of the stores involved was by means of "kicking" or "smashing" a glass door to gain admission, which method of gaining admission, if practiced to the extent indicated, might amount to a system, design, or plan of the defendant, and one ordinarily used by him in such practice. In each instance, where entrance was gained, the defendant's main purpose was to rifle the cash registers for such change as was ostensibly available to him. Coincidental with that was defendant's desire to fortify himself with liquor immediately before and after the commission of the burglaries. Each burglary indicates a similar planned time and place for the commission of the act. Many instances indicate that a taxicab was called by the defendant as a means of transportation from the scene of the crime and a counting and changing of small pieces of money into larger denominations. The jury had the right to believe that defendant had in his home or in his possession a portion of the stolen property, i.e., the bottle of benzedrine, as well as some of the change taken from the drugstore. ■ Mere unexplained possession of recently stolen property by a defendant, standing alone, is not sufficient to justify a conviction of burglary. (*People* v. *Boxer*, 137 Cal. 562 [70 P. 671].) The fact of possession of such property, unexplained, is a circumstance tending to show guilt, when coupled with other suspicious circumstances. (*People* v. *Nichols*, 39 Cal.App. 29 [177 P. 861].) ■ The evidence respecting the *modus operandi* of defendant in reference to the other burglaries did tend to show guilt in connection with the offense charged.

It has been held that evidence of another offense committed by an accused is properly admitted when it is so connected with the offense charged as to throw light on its commission such as, at the time a defendant was being arrested for a prior burglary he was at that time in possession of burglary tools and attempting to commit another burglary. (*People* v. *McGilver*, 67 Cal. 55 [7 P. 49].)

As indicated in the dissenting opinion in *People* v. *Peete, supra,* and the concurring opinion in *People* v. *Burns, supra,*

there is room for an honest difference of opinion as to whether certain described facts may or may not amount to a system or designed plan of operation. We do not desire to extend the rule but since the facts indicated in the Burns and other cases, sustained by the Supreme Court, appear to us to be more dissimilar than those in the instant case, we feel obligated to adopt the rule there applied and to hold that there is sufficient similarity pertaining to the facts to justify the trial court in submitting the evidence to the jury for its consideration under the limited instruction mentioned.

▪ Some complaint is made because of the lapse of time between the other claimed offenses and the one under consideration. Lapse of time is not altogether determinative of the admissibility of such evidence. Remoteness of the prior offenses has been held to affect only the weight of the evidence and not its relevancy or admissibility. (*People* v. *Morani*, 196 Cal. 154 [236 P. 135]; *People* v. *Hall*, 25 Cal. App.2d 336 [77 P.2d 244]; *People* v. *Miner*, 96 Cal.App.2d 43 [214 P.2d 557]; *People* v. *Burns, supra*; *People* v. *Peete, supra*.)

Here it appears that defendant, after committing burglary in 1942, was committed to prison in Texas, in 1943 he was committed to prison in California for the same offense, and in 1946 he was again committed to state's prison in this state. This may account for the fact that the offenses were not nearer to the time of the happening of the instant burglary. A lapse of time in excess of 18 years was sustained in *People* v. *Peete, supra*.

We conclude that the evidence fully supports the verdict of the jury and that no miscarriage of justice resulted.

Judgment affirmed.

Mussell, J., concurred.