[Crim. No. 141. Fifth Dist. Sept. 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. GILBERT MIKE GASTELUM, Defendant and Appellant.

W. J. McDermott, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse, Roland K. Hall and Edward A. Hinz, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant appeals from a conviction of violation of Health & Safety Code section 11500, possession of a narcotic. While serving a sentence for the commission of a felony, defendant was paroled in January 1964. He was returned to San Quentin Prison for parole violation, upon failing to pass a Nalline test, and sent to the Narcotic Treatment and Control Unit, a special facility for parolees who violate their parole by using narcotics. He was again released on parole around the middle of May 1964. On June 2, defendant accompanied his parole officer to a doctor's office for a routine Nalline test. Before the Nalline was injected, a red dot was discovered on his arm near the right elbow. He failed to pass the test, and his parole officer advised defendant he was transferring him to actual custody in the county jail. Defendant broke away and ran, but he was apprehended some 50 minutes later and booked in the county jail.

In defendant's wallet, the parole officer discovered receipts for rent and water service at an address different from that which defendant had given the Adult Authority as his place of residence. The parole officer, accompanied by a Modesto Police Department detective, went to the house, found the door locked, and called the owner. He had no key, so the parole officer and the detective entered through a window. Under a sink in the bathroom they found a hypodermic needle, spoon and eyedropper, and on a shelf in the kitchen they found a contraceptive with a white powder in it which proved to be heroin.

Following discovery of the narcotic paraphernalia and the heroin, the parole officer, the detective and another officer questioned defendant at the jail. He admitted the house was his home and said he had not told his parole officer where he was living because he knew it was not permissible for him to live there with a Mrs. Alleman and her two children. He denied

that his girlfriend knew the "stuff" was in the house, and in doing so tacitly admitted his knowledge of its presence. He also admitted using heroin four or five days before the Nalline test.

At the trial defendant denied knowledge of the heroin, the spoon, the hypodermic needle, and the eyedropper. He further denied making a statement to the officers admitting possession of the narcotic, and said that any statements he made were in response to threats to arrest Mrs. Alleman unless he admitted the "stuff" was his. He passed off as a scratch the red dot near his right elbow, noticed by the doctor before giving him the Nalline test, although he admitted he had used narcotics four days before the Nalline test.

■ Defendant's first assignment of error is that the jury was admonished only at the close of the first day of trial. Reversible error is alleged by failure to give the statutory admonition required by Penal Code section 1122 before the morning, noon and afternoon recesses. The error is not reversible, however, unless defendant makes a showing that he was prejudiced thereby. (*People* v. *Linden,* 52 Cal.2d 1, 28 [338 P.2d 397]; *People* v. *Trubschenk,* 134 Cal.App.2d 796, 799 [286 P.2d 436]; Witkin, Cal. Criminal Procedure (1963) § 517, p. 527.) Since defendant points to no prejudice resulting from the irregularity, the error must be regarded as harmless.

■ Defendant next contends the narcotic paraphernalia and the heroin were seized as the result of an illegal search of his residence without a warrant, in violation of the Fourth Amendment to the United States Constitution, applicable by way of the Fourteenth Amendment, and also in violation of article I, section 19, of the California Constitution.

Had defendant not been a parolee, the search would have been illegal, as the house was entered without defendant's consent and without a warrant several hours after his arrest. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641].) It is also true that when law enforcement officers are unaware of a defendant's parolee status the fact of parole is irrelevant and cannot justify an otherwise unlawful search. (*People* v. *Gallegos,* 62 Cal.2d 176 [41 Cal. Rptr. 590, 397 P.2d 174].)

The question, therefore, is whether the search of defendant's residence by his parole officer with full knowledge of defendant's status was lawful. Search of a parolee's residence by his parole officer can be discussed most profitably against the background of *People* v. *Hernandez,* 229 Cal.App.2d 143

[40 Cal.Rptr. 100], in which the legal and sociological aspects of parole supervision are reviewed. The court concluded, at pages 149-150:

"Intense scrutiny by the correctional authorities is a vital ingredient of a publicly acceptable parole system. For the purpose of maintaining the restraints and social safeguards accompanying the parolee's status, the authorities may subject him, his home and his effects to such constant or occasional inspection and search as may seem advisable to them. Neither the Fourth Amendment nor the parallel guaranty of article I, section 19, of the California Constitution blocks that scrutiny. He may not assert these guaranties against the correctional authorities who supervise him on parole. [Citation.] If this constitutional fact strips him of constitutional protection against invasions of privacy by his parole officer, the answer is that he has at least as much protection as he had within the prison walls. He did not possess this guaranty in prison and it was not restored to him when the gates of parole opened."

Defendant, aware of the broad language of the *Hernandez* case, argues that it does not apply to this case because his arrest and transfer from constructive custody to actual custody exhausted the parole officer's supervising authority, and that the subsequent search of defendant's home was unlawful. We would not restrict the rationale of *Hernandez* and the authority of a parole officer so narrowly. It is normally a parole officer's duty to investigate a parolee's living quarters and the conditions under which he lives. In this instance the duty became imperative when the parole officer discovered that defendant had given the Adult Authority a false residence address, in violation of the terms of his parole. Had the parole officer not proceeded to check out the leads provided by the receipts as to defendant's true place of residence, he would have been remiss in his duty to report to the Adult Authority all pertinent information regarding a parolee. Furthermore, whenever a parole officer learns that a parolee under his supervision has used narcotics and violated his parole, it is his duty, as an agent of the Adult Authority, to make an investigation.

Under the circumstances, the parole officer needed no warrant to search defendant parolee's true place of residence, nor was he precluded from asking a police officer to assist him in the performance of this duty. The search was legal and the fruit thereof properly admitted in evidence. (*People* v. *Denne,* 141 Cal.App.2d 499 [297 P.2d 451]; *People* v. *Con-*

*treras,* 154 Cal.App.2d 321 [315 P.2d 916]; *People* v. *Triche,* 148 Cal.App.2d 198 [306 P.2d 616]; *People* v. *Robarge,* 151 Cal.App.2d 660 [312 P.2d 70].)

Defendant's final point concerns admission into evidence of his statement made in response to questioning by his parole officer and Modesto city police officers after his arrest and after the search of his residence. The statement amounted to a confession and there is nothing in the record to refute defendant's contention that he was not advised of his right to counsel or to remain silent. The four factors delineated in *People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361], that render a confession inadmissible, were present. The only novel question is whether, by analogy to the rule on search and seizure, defendant's status as a parolee negatived his constitutional right to be advised of his right to counsel or to remain silent. The Supreme Court, in *People* v. *Dorado, supra,* upheld the right of a felon incarcerated in the state prison to be "effectively informed" of his right to counsel and of his "absolute right to remain silent" under the Fifth Amendment. Certainly a parolee in constructive custody is no less entitled to these constitutional rights than is a felon in actual custody. Therefore we conclude that the rule of *Dorado* is applicable to a parolee and that it was reversible error to admit defendant's confession in evidence.

Respondent argues that by failing to object to the introduction of his confession in the trial court defendant waived his right to raise the question for the first time on appeal. However, the case was tried August 10, 1964, before the *Dorado* opinion was filed. Under identical circumstances the Supreme Court has held that failure to object in a trial had before the rule of *Dorado* was enunciated does not bar a defendant from asserting the error in an appeal pending subsequent to Dorado. (*People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Davis,* 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142]; *People* v. *Bilderbach,* 62 Cal.2d 757, fn. 3 at p. 763 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Forbs,* 62 Cal.2d 847, 851-852 [44 Cal. Rptr. 753, 402 P.2d 825].)

Respondent argues that completely aside from the confession, the evidence of defendant's guilt is overwhelming, so that the judgment should be affirmed under the provisions of article VI, section 4½, of the California Constitution. The Supreme Court of California, following principles enunciated by the United States Supreme Court, has held that the intro-

duction of an involuntary confession elicited in violation of a defendant's rights under the Fifth Amendment to the United States Constitution, constitutes reversible error per se. (*People* v. *Sears,* 62 Cal.2d 737, 743 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Bostick,* 62 Cal.2d 820, 836 [44 Cal.Rptr. 649, 402 P.2d 529]; *People* v. *Clark,* 62 Cal.2d 870, 880-881 [44 Cal. Rptr. 784, 402 P.2d 856].)

The judgment is reversed.

Conley, P. J., and Brown (R. M.), J., concurred.

A petition for a rehearing was denied October 21, 1965.