[Crim. No. 13594.   Second Dist., Div. One.   Dec. 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. LEO P. LOBIKIS, Defendant and Appellant.

Raymond H. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of three counts of first degree robbery (§ 211, Pen. Code) and one count of kidnaping for the purpose of robbery (§ 209, Pen. Code); and that he was armed during the commission of the robberies. He admitted two prior felony convictions for which he served terms in the federal prison. He appeals from the judgment and order denying motion for new trial; the purported appeal from the order is dismissed.

Around 4 p.m. on June 17, 1966, defendant entered Mr. G's Fashions, Long Beach, and holding a small silver gun robbed Mrs. Quagliano of cash from the register and three dresses. He left through the rear door and ran down the alley. She immediately called the police.

Next door an employee, Margaret Berry, left a studio around 4 p.m. to go to the bank; a lady from Mr. G's Fashions ran out and said she had been robbed; Miss Berry saw a man running down the alley and followed him in her automobile, then turned and saw him on the street; he looked back and walked faster, turned down another alley, ran and jumped over a wall; defendant pointed a silver colored gun at her when she told him he had better "take those things [dresses] back"; he then got into the vehicle, forced her to drive ahead, took her card case containing $33, and left.

On June 26, 1966, defendant went into a market in Long Beach and pointed a nickle-plated .38 revolver at Mr. Honaker, demanding money from an open cash register; defendant took money as well as Honaker's wallet containing $5. As defendant put the money in a bag, Honaker picked up his own gun and shot him; defendant fled as Honaker fired again and missed.

Mrs. McNeill testified that she lived with defendant in a

common law relationship at 210 East 56th Street, Long Beach; in May or June he gave her some dresses; in June one day around noon, he took her and her children to a theater but later returned and told her he had been "hit" and needed to go to a hospital; his car was in a parking lot on Atlantic; since she could not drive, she went to a drugstore where she called her husband who drove him to Harbor General; defendant gave her the keys to his car.

Sergeant McMahan testified that he went to the hospital on June 27, 1966, to interview defendant who had made a robbery report; defendant told him he had been robbed and shot in San Pedro while hitchhiking, a friend had driven him to the hospital, and he owned a 1962 Rambler station wagon parked near the Uptown Theater in Long Beach; on June 29, 1966, he (McMahan) returned to the hospital; still defendant was not in custody; defendant told him he had driven to San Pedro in his automobile and been robbed; confronted with his earlier statement about hitchhiking, defendant said that he did not know what he was saying; defendant denied owning a handgun until he (McMahan) said he had pictures of him holding such a gun, then admitted having owned a shiny .38 caliber gun but said he had thrown it away. A search of defendant's automobile, a 1962 Rambler station wagon, revealed some loose change and two wallets containing numerous papers; a search of the apartment in which he lived with Mrs. McNeill produced $14 in change, a card case and a wallet. It was stipulated that the hospital records reflect that defendant was admitted at 4:30 p.m. on June 26, 1966; he was awake, alert and oriented when he walked into the hospital; and the injury was diagnosed as a gunshot wound.

▮ Directed to the sufficiency of the evidence to support the judgment, appellant advances a lengthy factual argument that the evidence against him "was not only confusing, in conflict and doubtful but wholly circumstantial." There is nothing circumstantial about the testimony of the three victims — eyewitnesses who positively identified defendant who, holding a gun, robbed them and, in the case of Miss Berry, entered her vehicle. And, in addition to the testimony of Mrs. Quagliano, Miss Berry, the victim of the second robbery and the kidnaping, saw defendant as he left Mr. G's Fashions with the dresses. During the robbery of the market, Mr. Honaker shot defendant; shortly thereafter defendant presented himself to a hospital with a gunshot wound. There is no room for argument that the three robberies did not

occur; as to the perpetrator thereof, the identification testimony of the three victims presents no factual conflict and the defense created none.

Appellant contends that his girl friend only permitted the search of his apartment and automobile because the officers wrongfully threatened to charge her with murder if she did not cooperate with them and that the search and seizure were unlawful.

The record shows that during 1966, Mrs. McNeill had been living in a common law relationship with defendant in an apartment located at 210 East 56th Street in which she had all of her belongings. To this apartment she carried a key. Officer Piper, under Sergeant McMahan's directions, was investigating the Honaker robbery, as well as other Long Beach robberies, and was familiar with the circumstances of the Honaker robbery, including the shooting. He was looking for defendant's car with a view to finding anything that would lead him to the identity of the perpetrator of the robbery. On June 28, 1966, he talked to Mrs. McNeill; she told him she had been living with defendant, was in a theater when he came in and told her he had been hit, she went with him to his car, a 1962 Rambler station wagon, in a parking lot on Atlantic but could not drive it, they went to a drugstore where she called her husband, McNeill drove defendant to the hospital and at the time defendant gave her the keys to his car. Officer Piper asked her permission to go through the apartment; she handed him the keys and said, "Here's also the keys to the car in case you want to go through it." He took the keys and went to Atlantic where he found a 1962 Rambler station wagon; he looked in the vehicle and found some change and two wallets containing numerous personal papers. On June 30 Sergeant McMahan, after talking to defendant in the hospital a second time, contacted Mrs. McNeill. He testified that he tried to assure her that she was actually not involved in any real trouble and that the police had no intention of jeopardizing her or putting her in jail or trying to implicate her in anything defendant had done. She gave him some dresses defendant had given her and a bag; then the officer asked her if defendant had given her any other things that might have been taken in the robbery. Mrs. McNeill told him that there was an amount ($14) of change in quarters that she could not account for in a drawer of a dresser at her address, 210 East 56th Street; that she planned to move out of the apartment; that in May she had seen in

defendant's possession a silver colored gun; and that they could go through the apartment. A few days later he asked for the keys to search the apartment and she gave them to him saying it was "all right"; she also gave him the keys to the car. In the beginning of July, Sergeant Dunyan went to the apartment where he found a handful of loose change in the center drawer of a bedroom dresser and a card case, and a wallet beneath the kitchen sink.

Mrs. McNeill testified that after she talked to Sergeant McMahan he asked her if he could have the keys to search the apartment and she gave them to him; she told him, " 'Okay,' I guess"; she turned over the keys to the apartment to one of the officers and gave them permission to look in the car; she had her belongings in the apartment and after defendant was arrested moved them, also those of defendant; she had a key to the apartment. On cross-examination she said that one of the officers told her that defendant might die and if he did she could be charged with murder because she drove him to the hospital; that she gave the officers permission to go to the apartment because she was afraid of being accused of his death and they said it would be much easier on her if she would cooperate with what they wanted her to do; and that she gave them the keys to the car because she was afraid that she might be accused of being involved in the case the defendant was involved in because she had heard a story that defendant had shot and killed a man in San Pedro.

While there is a conflict in the evidence on the issue of consent, it was the exclusive province of the trial judge, preliminary to the admission of the evidence, to determine whether consent was given and, if so, whether it was free and voluntary; if his ruling is supported by substantial evidence, it is conclusive on this court. (*People* v. *Carrillo*, 64 Cal.2d 387, 390-391 [50 Cal.Rptr. 185, 412 P.2d 377].) The trial judge had ample evidence from which to reach the conclusion that consent to enter and search defendant's apartment had been given by a joint occupant, and that she freely and voluntarily gave her consent and the same was not given as the result of the officer's assertion of authority or because of any fear engendered by him.

Admittedly, Mrs. McNeill was living with defendant in the apartment as his wife; she had all of her belongings there and carried a key to the premises; she had at least joint control over defendant's quarters. In the light of what she told them the officers were justified in concluding that Mrs.

McNeill had the authority over defendant's apartment she purported to have and was in fact a joint occupant; there was nothing unreasonable in their obtaining her consent to enter and acting accordingly. (*People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469] ; *People* v. *Ransome,* 180 Cal.App.2d 140, 145 [4 Cal.Rptr. 34] ; *People* v. *Yancy,* 196 Cal.App.2d 665, 667 [16 Cal.Rptr. 766] ; *People* v. *Amado,* 208 Cal.App.2d 780, 781 [25 Cal.Rptr. 539].) ██ ''The rule invoked is that laid down in *People* v. *Gorg* (1955) 45 Cal.2d 776, 783 [16-17] [291 P.2d 469], to the effect that a search is not unreasonable if made with the permission of one who, by virtue of his relationship to the defendant or other circumstances, the officers reasonably and in good faith believed had authority to consent to their entry.'' (*Bielicki* v. *Superior Court,* 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288].) Where entry to defendant's residence with consent of his mistress was proper, see *People* v. *Smith,* 183 Cal.App.2d 670, 671 [6 Cal.Rptr. 866] ; *People* v. *Howard,* 166 Cal.App.2d 638, 651 [334 P.2d 105].

██ It appears from the record that the only evidence seized through the search of the apartment was loose change, a card case and a wallet, and of defendant's car, a wallet and personal papers. In the light of the very strong evidence pointing to defendant's guilt through the testimony of the three eyewitness victims of the robberies and kidnaping, we are convinced that even had the evidence not been admitted there is no possibility that a different result would have followed.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.