[Crim. No. 13676.   Second Dist., Div. One.   Apr. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE WAYLON DEBNAM, JR., Defendant and Appellant.

Mitchell J. Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of burglary.

In an information filed in Los Angeles on November 28, 1966, defendant was charged with burglarizing the residence of Lawrence and Johnnie Bruce on November 14, 1966. Defendant was found guilty of burglary in the second degree

208

in a jury trial and sentenced to the state prison. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: At about 5 p.m. on November 14, 1966, Johnnie Mae Bruce arrived home from work as usual only to discover that her home had been forcibly entered and ransacked during the day. A stereo set, color television set, coffee table, and two bedspreads were missing. The patio door was open and when she looked out into the back yard, she saw that the coffee table and one bedspread had been deposited there.

Her husband, Lawrence Bruce, arrived home about 6 p.m. He also found the house a shambles and noticed the missing furnishings. When he went into the back alley to investigate, he surprised two men carrying away the stolen stereo set. He commanded them to stop, but instead they dropped the set and ran. One of the men Bruce identified as appellant, a long-time friend and neighbor, and Bruce chased both men down the street to appellant's house. In a car parked in appellant's driveway he found his color television set shrouded in one of the missing bedspreads.

At her husband's direction, Mrs. Bruce telephoned the police who soon arrived on the scene, observed the stolen items in the car at appellant's residence, and arrested appellant on Bruce's identification. The officers later learned that the car in which the stolen items were discovered belonged to one of appellant's acquaintances, Nelson Womack, who loaned it to appellant at about 5:30 p.m. on the day of the crime. Appellant had visited Womack's home late that afternoon, noticed his color television set and asked whether he'd like another. Womack said he'd like another such set if he could purchase it for $85, whereupon appellant suggested that he might be able to arrange that, borrowed Womack's empty car, and departed before 6 p.m. After appellant was arrested and advised of his constitutional rights, he told police that he drove the borrowed car home, then walked over to visit a friend who lived in the next block, and was surprised upon his return to find a group of people gathered at the rear of his house. A close friend of appellant's, Lonnie Tufts, testified at the trial that he spent from 9:30 a.m. until 4:45 p.m. in appellant's company on the day of the crime and never saw appellant in possession of a television set.

Evidence concerning other crimes was introduced at the trial to show a common plan or design. Curtis W. Fischer left for a trip to Washington, D.C. on October 26, 1966, and on December 6, 1966, he returned to find two television sets and a

radio missing from his Clairmount Manor residence. Esther Sanders, housekeeper at Clairmount Manor, cleaned the Fischer apartment the day before his trip and recalled certain bedspreads that were in the apartment that day and which were returned to her by police detectives on November 3, 1966. When she replaced the bedspreads, she noticed that the Fischer color television set was missing and the window in the back door was broken. Another burglary victim was Lula York, who lived nearby. She returned to her home on the evening of November 1, 1966, to find the front bedroom screen off and the window open. She discovered that the house had been ransacked and bedding, food stuffs, and refrigerator trays had been taken.

On November 4, 1966, Officer Whitall visited the residence occupied by appellant and his brother, Earl Debnam. Officer Whitall, who was accompanied by Earl's parole officer, was investigating a stolen television set which had been pawned under Earl's name. The television set, which had been identified by its serial number, had been stolen sometime during the evening of October 1 from the home of Mr. and Mrs. Koppandy, who also resided near appellant. The officers knocked at the door of the Debnam residence and were invited in by appellant's brother who consented to let them search the house in appellant's absence. In one of the bedrooms Officer Whitall found Mr. Fischer's bedspreads; in another bedroom he found bedding and in the kitchen he saw the refrigerator trays and food taken from Lula York.

After appellant was arrested on the evening of November 4, he was advised of his constitutional rights. He was again admonished of these rights a few days later when he was questioned about the pawned television set. Appellant explained that he pawned the set using his brother's driver's license for identification because his brother was then in jail. Appellant claimed, however, that he found the television set behind a vacant house near his residence. He also told officers that he had not visited his home for a week prior to the time of his arrest.

Appellant contends that (1) the evidence is insufficient to support his conviction; (2) the evidence obtained from the search of his home was illegally obtained and should be excluded; (3) the court erred in admitting evidence concerning other crimes at his trial; and (4) appellant did not effectively waive his right to have counsel during police interrogation. These contentions are without merit,

Appellant first asserts, in reliance upon Lonnie Tufts' testimony that they were together until 5 p.m. on the day of the crime, that it would be unreasonable to infer that he would burglarize the Bruce residence so late in the day well knowing that the Bruces customarily arrived home between 5 and 6 p.m. ■ It is well established that a criminal conviction will not be reversed on appeal unless it clearly appears that under no hypothesis whatever is there sufficient substantial evidence to support the verdict. (*People* v. *Newland,* 15 Cal. 2d 678, 681 [104 P.2d 778] ; *People* v. *Hickok,* 230 Cal.App.2d 57, 59 [40 Cal.Rptr. 687].) ■ The evidence shows that the Bruces found some of their missing furnishings in the back yard and others in a car in appellant's driveway after Bruce surprised appellant removing the stereo set from the yard and chased him to his residence. The determination of the weight to be given Bruce's testimony in relation to that of defense witness Tufts lies exclusively within the province of the trier of fact and will not be overturned unless the 'evidence supporting it is inherently improbable. (*People* v. *Sanders,* 217 Cal.App.2d 606, 610 [31 Cal.Rptr. 707] ; *People* v. *Lindsay,* 227 Cal.App.2d 482, 493-494 [38 Cal.Rptr. 755].) Appellant was found in possession of the stolen property and identified by Bruce. Any conflicts between these facts and the statements made by appellant and his defense witness were resolved adversely to appellant on substantial evidence which supports appellant's conviction.

■ Appellant next contends that the search of his house was illegal since his brother's consent could be effective to entitle the police to search only the area under his brother's control. The case of *People* v. *Egan,* 250 Cal.App.2d 433, 436-437 [58 Cal.Rptr. 627], relied upon by appellant fails to support this contention. In that case the suspect's stepfather consented to a police search of the premises and also allowed them to examine the interior of a bag belonging to his stepson. The court found that the stepfather had no authority to consent to a search within his stepson's personal belongings. In the instant case appellant's brother, a joint occupant of the premises who was a parolee, was suspected of a certain burglary. ■ A parolee's premises may be searched by his parole supervisor without a search warrant and without the parolee's consent (*People* v. *Gastelum,* 237 Cal.App.2d 205, 208-209 [46 Cal.Rptr. 743]) since the search is not governed by the same rules which apply to premises belonging to citizens possessed of full civil rights. (*People* v. *West,* 253 Cal. App.2d 348, 354-355 [61 Cal.Rptr. 216].) ■ Earl

Debnam nonetheless consented. Officers did not pry into personal articles belonging to appellant, but merely observed stolen articles found in plain view in the bedrooms and the kitchen area which they were entitled to search with the consent of the joint occupant. (*People* v. *Smith,* 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222] ; *People* v. *Lobikis,* 256 Cal.App.2d 775, 780 [64 Cal.Rptr. 390] ; *People* v. *Crayton,* 174 Cal.App.2d 267, 269 [344 P.2d 627].) The search was reasonable and lawful and the evidence obtained therefrom was properly admitted at appellant's trial.

█ Appellant further contends that evidence of other crimes was improperly admitted at his trial. Evidence was introduced concerning three burglaries of private residences in the vicinity of appellant's home. The burglaries all took place during October and early November of 1966 and in each instance the burglar entered by forcibly opening a window. The evidence of these other offenses tended to illustrate a generally consistent criminal pattern since the burglar customarily removed stereo or television equipment and the bedding which he used to protect these items from fingerprints or surface mars. The burglar took television sets and blankets from the Fischer residence, television and stereo sets from the Koppandy residence, and bedding and refrigerator items from the York residence. The crimes took place in a brief period of time in residences in the near vicinity of one another and each bears a close resemblance to the burglary of the Bruce home. Evidence of other crimes is admissible to show a general pattern, scheme, or design such as that here illustrated. (*People* v. *Grimes,* 113 Cal.App.2d 365, 369-371 [248 P.2d 130] ; *People* v. *Curcio,* 255 Cal.App.2d 183, 186 [63 Cal.Rptr. 184].) The trial court, after hearing objection and argument on the issue, properly determined that the circumstances of the other crimes were sufficiently similar to the charged offense to warrant the inference that appellant was implicated in all. (*People* v. *Grimes, supra,* 113 Cal.App.2d 365, 371; *People* v. *Lindsay, supra,* 227 Cal.App.2d 482, 504; *People* v. *Crovedi,* 253 Cal.App.2d 739, 747-748 [61 Cal. Rptr. 349].) █ Where composite elements of the prior crimes disclose a peculiar consistent plan, or method of operation, the probative value of such evidence showing a behavior pattern which tends to identify the accused as the perpetrator of the crime renders the evidence admissible. (*People* v. *Fleig,* 253 Cal.App.2d 634, 641 [61 Cal.Rptr. 397].)

█ Appellant finally contends that he did not under-

stand the admonitions of police officers who on at least three occasions following his arrest advised appellant of his constitutional rights. The officers testified that they told appellant what constitutional protections were available for his benefit and that he responded that he understood these rights. The court twice heard appellant, on *voir dire* outside the presence of the jury, and concluded that appellant was properly advised of his constitutional rights and that he made an intelligent waiver of such rights. Appellant's responses to courtroom interrogation were vague and uncertain; he claimed that he could not recall being advised of certain rights. ▮ The question whether an accused waived his right to counsel and his right to remain silent before making a statement to police officers is primarily a question of fact for the trial judge. (*People* v. *Sosa*, 251 Cal.App.2d 9, 17 [58 Cal.Rptr. 912]; *People* v. *Stafford*, 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598].) ▮ There is nothing in the record to cast doubt upon the propriety of the trial court's determination of this issue.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.