[Crim. No. 14264. Second Dist., Div. Two. June 19, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. ADRIAN CONTRERAS, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Sanz & Gelber and Sidney L. Gelber for Defendant and Respondent.

HERNDON, Acting P. J.—The People have appealed from the order of the trial court setting aside an information charging defendant and respondent with possession of marijuana. The order presented for review was entered upon the granting of defendant's motion made under Penal Code section 995 which authorizes such order upon a showing (1) that "the defendant had not been legally committed by a magistrate;" or (2) that "the defendant had been committed without reasonable or probable cause."

The determinative issue is whether or not the record supports the trial court's implied conclusion that the magistrate acted illegally or without reasonable or probable cause in committing respondent and requiring him to answer to the charge. More specifically, the issue is whether or not sufficient

competent and admissible evidence was offered by the prosecution and received by the magistrate at the preliminary examination to show such "a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused." (Cf. *People* v. *Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344]; *Kind* v. *Superior Court*, 143 Cal.App.2d 100, 102 [299 P.2d 414]; *People* v. *Jablon*, 153 Cal.App.2d 456, 458 [314 P.2d 824]; *People* v. *Malki*, 181 Cal.App.2d 118, 121 [5 Cal.Rptr. 207].)

▇▇▇ Our review leads to the conclusion that the magistrate's order of commitment is legally supported by the record indicating the presence of properly admitted evidence sufficient to show the existence of probable cause. It follows that the order setting aside the information must be reversed. We shall summarize the testimony of the two witnesses upon which the defendant was ordered held to answer.

The witness, Delbert J. McCuen, testified that he was a state parole agent and that the defendant had been placed under his supervision. Because defendant had failed to respond to two surprise Nalline test notices, this witness went to his house to arrest him on the date in question. The witness had his partner with him. When repeated knocks failed to produce an answer, the witness called the Montebello police for assistance.

Thereafter, but prior to the arrival of the Montebello police officers, the witness "went around to the back door and knocked again, and called to Mr. Contreras, and he finally came to the door and opened it . . ." Officer McCuen entered the premises and engaged in a conversation with defendant. As stated by the witness: "I immediately began a conversation with him, and I asked him if he had been using narcotics, and he admitted that he had. I then checked his arm. He showed me his arm, and the veins were quite swollen."

Officer McCuen thereupon placed defendant under arrest for violation of parole. A few minutes later two officers from the Montebello Police Department arrived and entered the house. Officer McCuen informed them that defendant was under arrest for violation of parole. Officer Swietanski testified that he was a police officer for the City of Montebello assigned to the Narcotics Division; that on the date in question he went to the residence of the defendant. When asked his purpose in going there, the witness responded: "I had received a request by the desk sergeant, and which in turn he received a telephone call from Officer McCuen, requesting

assistance by officers in apprehending a parole violator at this location.'' The testimony of the witness continued with the following questions and answers:

''Q. When you got there did you notice anything unusual about the defendant's appearance? A. Not about his appearance, no. Q. Did you examine his arms at any time? A. Yes, I did. Q. When was that? A. After I arrived Officer McCuen stated he was in his custody for parole violation, and also that he had admitted to using narcotics. And at this time I asked the defendant if I could look at his arms, and he showed me his arms. Q. Did you notice anything ususual about them? A. Yes, I observed numerous what appeared to be illegal narcotics injection wounds on both arms. Q. Were these old marks? A. Some were old and some were fresh puncture wounds. Q. After you noticed these marks what did you do next? A. I had asked him myself if he had been using, and he stated yes, he had. And I said—MR. CHAVEZ: Just a moment, Officer. I think that should go out as an improper foundation for any asking or telling of this officer at this time. THE COURT: Probably so. With this officer now it's a little different. MR. GOLDSTEIN: Q. Did you ever advise constitutional rights at any time? A. No, I did not. Q. Did your partner ever do that in your presence? A. Not in my presence. Q. And after a conversation with the defendant what did you do next? A. I asked him where his kit was. Q. After the conversation. A. We began a search of the premises. Q. Did you discover anything in the search? A. Yes, we did. Q. What was that? A. I found marijuana cigarettes and debris, seeds, and double-scored amphetamine pills in a bureau in the bedroom. Q. Do you know whose bedroom this was? A. I assumed it was the defendant's.''

We find no merit in respondent's contention that his admission to the officers that he had been using narcotics without having received prior advice concerning his constitutional rights operated to render his arrest and the incidental search illegal. As we have indicated, the only admission made by respondent in his conversations with the officers was his admission that he had been using narcotics. His counsel interposed no objection and made no motion to strike the testimony to this effect. It is apparent that this admission was innocuous and inconsequential in the context of this case. The condition of his arms and his prior narcotic record spoke eloquently of the practical certainty that he was using narcotics and of the likelihood that he was in possession thereof. In these circumstances and quite apart from appellant's limited admission,

the right and indeed the duty of the officers to make a reasonable search incidental to this unquestionably legal arrest cannot be seriously doubted.

A parole officer may take a parolee into custody at any time even without probable cause for an arrest (*People* v. *Hernandez,* 229 Cal.App.2d 143 [40 Cal.Rptr. 100]; *People* v. *Perez,* 243 Cal.App.2d 528, 531-532 [52 Cal.Rptr. 514]), and as an incident to that arrest has the right to search the defendant (*People* v. *Hernandez, supra; People* v. *Gastelum,* 237 Cal.App.2d 205, 208-209 [46 Cal.Rptr. 743]). Here it would appear that the parole officer had probable cause to make an arrest based upon a reasonable belief that the defendant possessed narcotics. The fact that appellant had failed to report for his Nalline test, coupled with the officers' observations of the condition of his arms, was sufficient to suggest the probability that he possessed contraband. (*People* v. *Carrillo,* 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377].) The evidence in the present record tends strongly to indicate that the officers from the Montebello Police Department were acting as agents of the parole officer when they conducted their search. (*People* v. *Contreras,* 154 Cal.App.2d 321 [315 P.2d 916]; *People* v. *Quilon,* 245 Cal.App.2d 624, 627 [54 Cal.Rptr. 294].) Moreover, the police officers had the right to conduct their search on the basis of their own observations as an incident of defendant's lawful arrest either as a parole violator or as a probable possessor of narcotics. (*People* v. *Giles,* 233 Cal.App.2d 643 [43 Cal.Rptr. 758]; *People* v. *Wells,* 245 Cal.App.2d 203, 206 [53 Cal.Rptr. 762].)

Finally, as recently stated in *People* v. *Debnam,* 261 Cal.App.2d 206, 210 [67 Cal.Rptr. 692]:

"[A] parolee's premises may be searched by his parole supervisor without a search warrant and without the parolee's consent (*People* v. *Gastelum,* 237 Cal.App.2d 205, 208-209 [46 Cal.Rptr. 743]) since the search is not governed by the same rules which apply to premises belonging to citizens possessed of full civil rights. (*People* v. *West,* 253 Cal. App.2d 348, 353-355 [61 Cal.Rptr. 216].)"

The order is reversed.

Fleming, J., and Nutter, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.