268 Cal.App.2d 387 (1968)
HAROLD DWAYNE HACKER, Petitioner,
v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
Civ. No. 1054. 
California Court of Appeals. Fifth Dist. 
Dec. 20, 1968.
 Soares, Simpson & Rowson and William Silveria, Jr., for Petitioner.
 No appearance for Respondent.
 Thomas C. Lynch, Attorney General, Nelson P. Kempsky, David R. Cunningham, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Real Party in Interest.
 STONE, J.
 Petitioner seeks a writ of prohibition to restrain the Superior Court of Tulare County from proceeding in the case of People v. Hacker. The petition was brought pursuant to Penal Code section 999a after the court had denied a motion under Penal Code section 995 to set aside an information charging petitioner with violation of Health and Safety Code section 11500, possession of a narcotic.
 The principal ground for his motion below and his petition to this court is that the narcotic which he is alleged to have possessed, and which was admitted in evidence over objection at the preliminary hearing, was seized illegally. He also asserts insufficiency of the evidence.
 Following commitment to the Department of Corrections *389 and placement at the California Rehabilitation Center at Corona, petitioner was released in an "outpatient status" under the supervision of Field Agent Leigh Byrne. As an outpatient he was obligated to obey the terms and conditions imposed by the Rehabilitation Center. It was Agent Byrne's duty as supervisor to see that petitioner complied and if he had not, petitioner's outpatient status could be suspended by Byrne. On July 16, 1967, Byrne obtained a specimen of urine from petitioner, who was residing at his mother's home in Visalia. A laboratory test of the urine revealed a positive narcotics usage, so on July 22 Byrne ordered Detective Domier of the Visalia Police Department to "pick up" petitioner. He did so under the authority of Welfare and Institutions Code section 3151, which provides that:
 "... A single member of the authority may by written or oral order suspend the release in outpatient status of such a person and cause him to be retaken, until the next meeting of the authority."
 "It is hereby made the duty of all peace officers to execute any such order in like manner as ordinary criminal process."
 Detective Domier and a sergeant from the Visalia Police Department went to the address given, and were informed that petitioner could be located at another address. At the place designated, the sergeant checked the rear exit of the apartment and Detective Domier knocked on the front door.petitioner answered, admitted Domier, and was placed under arrest, searched and handcuffed. The sergeant then entered the apartment and the officers searched the premises. Two rubber contraceptives were discovered in the kitchen, containing a powder which Detective Domier said was "In my opinion I felt that it was heroin." The material was sent to a state chemist, who confirmed Domier's suspicions.
 Petitioner first points out that the court must distinguish between an outpatient whose status derives from an involuntary commitment under Welfare and Institutions Code section 3050 et seq., and a parolee. His point is that a felon committed to the Department of Corrections loses his civil rights, which are not restored by parole status; on the other hand, a commitment under section 3050 et seq. is nonpenal in character. (In re De La O, 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; In re Trummer, 60 Cal.2d 658 [36 Cal.Rptr. 281,388 P.2d 177].) In short, petitioner asserts that his civil rights were not impaired by his status as an outpatient, *390 but his distinction between a parolee and an outpatient is not completely accurate.
 While commitment proceedings are nonpenal in character, an outpatient does not enjoy full civil status. His place of abode, his place of employment and other activities are subject to approval and periodic review by his field agent. Further, when requested he must submit to narcotic use tests, such as the Nalline test used here. There is a calculated risk in the rehabilitation process that requires not only some impingement of an outpatient's civil rights, but close surveillance. To this extent there are criminal aspects to outpatient status (People v. Moore, 69 Cal.2d 674, 681- 682 [72 Cal.Rptr. 800, 446 P.2d 800]) which parallel the status of a parolee.
 [1] However, we do not deem it necessary to justify the search in this instance by relying upon the doctrine of constructive custody that has been utilized to justify a search of premises occupied by a parolee. (People v. Hernandez, 229 Cal.App.2d 143 [40 Cal.Rptr. 100]; People v. Gastelum, 237 Cal.App.2d 205 [46 Cal.Rptr. 743]; People v. Perez, 243 Cal.App.2d 528 [52 Cal.Rptr. 514]; People v. Contreras, 263 Cal.App.2d 218 [69 Cal.Rptr. 548].) "A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony. ... Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. The test is not whether the facts on which the officer relies are sufficient to convict, but only whether the person should stand trial." (People v. Torres, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) The arresting officer was informed that a test of petitioner's urine revealed a narcotic substance. When petitioner came to the door at 1:30 in the afternoon in response to the officer's knock, he was shirtless and the officer felt "that Mr. Hacker was under the influence of something." When Hacker was told that the officer was going to search the premises, he became nervous. The officer knew, of course, from petitioner's outpatient status that he had been a narcotics user, and that he had recently failed his Nalline test. To a reasonable man this would indicate that petitioner was again using narcotics in violation of his outpatient status. These facts gave the officer probable cause to arrest petitioner for possession of narcotics and, incident to the arrest, to search the premises. *391
 Under like facts the court, in People v. Clark, 263 Cal.App.2d 87, observed at pages 92-93 [69 Cal.Rptr. 218]: "In People v. Carrillo, 64 Cal.2d 387 [50 Cal.Rptr. 185, 412 P.2d 377], the court dealt with a prison parolee who had a prior narcotic conviction and had missed a Nalline test. The court held that these two factors gave his parole agent probable cause to arrest him for present possession of narcotics. We do not believe that from the point of view of probable cause, it makes a difference whether, after the first conviction, a defendant had been sent to prison or to Corona. Thus the facts that defendant was an outpatient after a prior narcotics conviction, had missed his Nalline test, had several days previously appeared to have a suspicious mark on his arm and had failed to report for work on October 19, gave Dashkin probable cause to arrest defendant for present possession of narcotics. As an incident to such an arrest, Dashkin, as the arresting officer (fn. 3), had a right to search the person of the defendant and so much of the premises as were subject to his control."
 Although the foregoing language is dictum, we believe the principle enunciated in Clark is valid since it parallels the reasoning in cases upholding a search made concurrently with an arrest predicated upon information received from a reliable informant. Here, Byrne, a governmental official, was charged by law with periodically checking petitioner's activities, particularly his possible use of narcotics. The case is stronger than the reliable-informer cases because the information was obtained, not by an informer, but by an officer of the law, and the information was based upon a scientific chemical test. We conclude that the facts known to Detective Domier at the time of the arrest and search bring the case within the rationale of arrest and search cases where "probable cause" is grounded upon information supplied by a reliable informant.
 Petitioner also asserts there is no evidence to support the magistrate's implied finding that petitioner had knowledge of the presence of the narcotic and dominion or control over it.penal Code section 872 requires that a defendant be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof. ..." The critical language, of course, is "sufficient cause," which the courts have interpreted to mean "such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously *392 entertain a strong suspicion of the guilt of the accused." (Rogers v. Superior Court, 46 Cal.2d 3, 7-8 [291 P.2d 929].)
 [2] The essential elements of the crime with which petitioner is charged, violation of section 11500 of the Health and Safety Code, "may be established by circumstantial evidence and any reasonable inference drawn from such evidence." (People v. Groom, 60 Cal.2d 694, 697 [36 Cal.Rptr. 327, 388 P.2d 359]; People v. Jackson, 198 Cal.App.2d 698, 704 [18 Cal.Rptr. 214].) [3] The narcotic need not be found on the person of the defendant. It is sufficient if found in a place or area under the possession and control of the accused. (People v. Estrada, 234 Cal.App.2d 136, 155 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307]; People v. Rogers, 207 Cal.App.2d 261, 268 [24 Cal.Rptr. 341]; People v. Robarge, 151 Cal.App.2d 660, 668 [312 P.2d 70].) [4] Here, the narcotic was found in the kitchen of the apartment in which petitioner apparently was sleeping when the officer awakened him. He had access to the narcotic and as he was alone in the apartment, it is a reasonable inference that he had dominion or control over it.possession may be constructive as well as physical, and it need not be exclusive. (People v. Finn, 232 Cal.App.2d 422, 426 [42 Cal.Rptr. 704]; People v. Prieto, 191 Cal.App.2d 62, 74 [12 Cal.Rptr. 577].)
 There remains the question whether there was proof of petitioner's knowledge of the narcotic character of the substance found in the apartment where he was staying, and where he was arrested. [5] Circumstantial evidence is sufficient to establish this element of the crime. Defendant's knowledge of the nature of the object possessed can be inferred from evidence of other acts of a similar nature committed by him. (People v. Castellanos, 157 Cal.App.2d 36 [320 P.2d 152]; People v. Horn, 187 Cal.App.2d 68, 75 [9 Cal.Rptr. 578].) [6] At the time of his arrest and the discovery of the narcotic substance, petitioner was an outpatient, a status arising by reason of use of narcotics in the past. Further, the officer was there to take petitioner into custody because he failed to pass his Nalline test, which indicated that he had used narcotics a short time earlier. From these facts, the magistrate could infer that petitioner had knowledge of the narcotic character of the substance under his dominion. It is the rule on review of a motion under section 995 that: "A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. Under *393 section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed." (People v. Platt, 124 Cal.App.2d 123, 131 [268 P.2d 529].)
 The order staying further proceedings is dissolved and the petition is denied.
 Conley, P. J., and Gargano, J., concurred.